CENTRAL STOCK & GRAIN EXCHANGE OF CHICAGO v. BENDINGER.

BENDINGER v. CENTRAL STOCK & GRAIN EXCHANGE OF CHICAGO.

(Circuit Court of Appeals, Seventh Circuit. June 5, 1901.)

Nos. 765, 768.

1. PRINCIPAL AND AGENT—WRONGFUL DIVERSION OF MONEY BY AGENT—RIGHT OF PRINCIPAL TO FOLLOW FUND.

Money intrusted to an agent for a particular purpose is impressed by the law with a trust in favor of the principal until it has been devoted to such purpose; and, where it has been wrongfully diverted by the agent, such trust follows the fund into the hands of a third party unless such party receives it for value in good faith, and without notice of the trust, so as to acquire an equity therein superior to that of the true owners.

2. SAME—INTERMEDDLER WITH FUND—TRUSTEE DE SON TORT.

Plaintiff intrusted money to an agent for the purchase of certain bonds. The agent, without the consent or knowledge of plaintiff, deposited the money from time to time with defendant, which conducted a "bucket shop," as margins to cover gambling transactions which were illegal and void, and constituted misdemeanors under the laws of the state. Subsequently defendant paid to the agent certain sums as profits, which the agent converted to his own use. The remaining margins were "lost" in the deals. *Held*, that defendant, having received the money illegally, became at once a trustee de son tort, and liable to plaintiff for the entire amount, notwithstanding it had no knowledge of the actual ownership, and that its repayment of sums to the agent, who had already violated his trust, was not a restitution to plaintiff, of which it could avail itself as a defense, even pro tanto.

Cross Appeals from the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

The bill in the circuit court was by the complainant (appellee on the main appeal and appellant on the cross appeal), a citizen of Ohio, against the defendant below (appellant on the main appeal and appellee on the cross appeal), a corporation under the laws of Illinois, to recover nine thousand dollars said to have been diverted by one William Stichtenoth, brother-in-law of complainant, from the purpose for which it was intrusted to him, and by him

lost in gambling operations carried on through the house of the defendant and its Cincinnati agency.

The bill, in substance, avers, and the proof, in substance, shows, that on or about the first of May, eighteen hundred and ninety-six, the complainant delivered nine thousand dollars in currency to Stichtenoth with directions to invest the same in the capital stock of the Cincinnati Street Railway Company of Cincinnati, the certificates for the same to be issued and taken in complainant's name; but that, having come into possession of the money, Stichtenoth, without the knowledge, authority or consent of complainant, deposited seven thousand six hundred and forty-two dollars and fifty cents of the same, on divers dates and in sundry sums during the months of May, June and July, eighteen hundred and ninety-six, with M. S. Forbus & Company, of Cincinnati, as margins or forfeits (and without any other consideration whatever), in certain transactions in grain and other commodities, commonly called "bucket shop" transactions; that some of the checks making these deposits were signed by Stichtenoth, "Agent"; that the defendant and Forbus & Company were what are commonly known as "bucket shops," Forbus & Company being the agents, in the matter of Stichtenoth's transactions and his deposits as margins thereto, of the defendant; that there was no intention, on the part either of Stichtenoth, of Forbus & Company or of the defendant, that there should be any actual buying, selling, receiving or delivering of such commodities, or that there should be any engaging in any bona fide transaction in any such commodity; but that the transactions were, from beginning to end, intended as, and, in fact, were, gambling transactions in the future prices of grain and other commodities.

The bill, in substance, avers, and the proof, in substance, shows, that, in the course of these transactions, there were put, at divers times during the months of May, June and July, to the credit of Stichtenoth on the books of Forbus & Company, as so-called profits, certain sums of money, amounting, in all, to one thousand four hundred and thirty-eight dollars and fifty cents; that, during such period, there were also put on the same books to the debit of Stichtenoth certain other sums of money, as so-called losses, amounting, in all, to seven thousand eight hundred and twenty-three dollars and seventy-five cents; that, from time to time during such period, according to the entries in said books, there were withdrawn by Stichtenoth these so-called profits to the amount of one thousand four hundred and thirty-eight dollars and fifty cents, and the so-called losses were charged up against the margins deposited by Stichtenoth.

It is averred, in substance, in the bill, and shown by the proof, that no part of the so-called profits thus withdrawn by Stichtenoth has ever been turned over to the complainant, and that no part of the seven thousand six hundred and forty-two dollars and fifty cents deposited by Stichtenoth as margins has ever been returned to him by Forbus & Company or the defendant, unless the withdrawal of the so-called profits by Stichtenoth is to be regarded as a repayment to him of so much of the money deposited.

Neither the defendant nor Forbus & Company are shown to have had knowledge that the money deposited by Stichtenoth as margins belonged to complainant, or that Stichtenoth was without authority to use it for the purposes of speculation; but Stichtenoth was not only without such authority, but, during the next two years, by paying to complainant at stated intervals sums corresponding with the interest supposed to be falling due upon the Cincinnati Street Railway bonds, kept her in the belief that her money was invested as had been directed.

The bill avers that the defendant and Forbus & Company refused her an inspection of their books and accounts; that defendant had attempted to cover up and confuse the entries of its transactions with Stichtenoth, as well as the true character and nature of such transactions; and that the complainant was unable, without the aid of discovery, to prosecute her claim, or state the particulars of the transactions. The bill is framed on the theory that the money deposited by Stichtenoth as margins remains, notwithstanding such deposit, the money of the complainant; that defendant's relation to it was that of a trustee; and that an accounting was essen-

tial to develop fully the nature of that relation, and the amount for which the defendant was responsible.

The Circuit Court decreed that defendant was liable to complainant as trustee on account of the seven thousand six hundred and forty-two dollars and fifty cents thus deposited, for which sum, less one thousand four hundred and thirty-eight dollars and fifty cents, previously withdrawn by Stichtenoth, together with interest at the rate of five per centum from July the fifteenth eighteen hundred and ninety-six, a decree was entered.

From this decree an appeal is prosecuted by the Central Stock and Grain Exchange of Chicago and a cross appeal by Emma Bendinger.

The principal errors assigned on the appeal are as follows:

First, that the case made out is not one cognizable on the equity side of the Circuit Court.

Second, that the court erred in finding M. S. Forbus & Company to be the agent and confederate of appellant.

Third, that the court erred in finding that the several sums had been deposited as margins or forfeits to gambling transactions.

Fourth, that the court erred in holding appellant as trustee for appellee. No error is assigned upon the allowance of interest.

The substantial error assigned upon the cross appeal was: that the court erred in holding that the Central Stock and Grain Exchange of Chicago was entitled to the credit of the fourteen hundred and thirty-eight dollars and fifty cents withdrawn by Stichtenoth as so-called profits.

Jacob J. Kern, Chas. D. Fullen, and John A. Brown, for appellant.

Walter S. Granger and Rufus S. Simmons, for appellee.

Before WOODS, JENKINS, and GROSSCUP, Circuit Judges.

After the foregoing statement of the case, GROSSCUP, Circuit Judge, delivered the opinion of the court, as follows:

The second and third assignments of error on the main appeal are already disposed of in the statement of the case. The evidence convinces us that Forbus & Company were but feeders to the Chicago house, the appellant; and that whatever monies were deposited with the former as margins were, in effect, acquired by the latter. The transactions may be treated as if they had taken place through no intermediary, but primarily with the Chicago house. Indeed, some of the transactions were directly with the appellant.

The dealings were, in law, gambling transactions. Each one, so far as it was done in Ohio, was a violation of the laws of that state, and, so far as done in Illinois, was a violation of the laws of Illinois. Each transaction was punishable in one state or the other—possibly in both—as a statutory misdemeanor. Each transaction, from beginning to end—including the deposit of appellee's money as margins, and its absorption by appellant in the deals—was illegal and void. Section 131, c. 38, Rev. St. Ill.; subdivision 2, § 6939, Rev. St. Ohio. See, also, Higgins v. McCrea, 116 U. S. 679, 6 Sup. Ct. 557, 29 L. Ed. 764.

What right, then, has appellee against appellant respecting her money so deposited and disposed of. At common law money lost in gaming could not be recovered. But the statute of Illinois (section 132, c. 38), as interpreted by the Appellate Court of Illinois (Elder v. Talcott, 43 Ill. App. 439), changes the common law, and authorizes such recovery, either by an action at law, for debt, replevin, assumpsit, or trover, or by a proceeding in chancery. Under

this statute, thus interpreted, had appellee herself been a party to the transactions, through Stichtenoth, as her agent, an action by her to recover would lie. It is not necessary, however, that we should go to that extent, for appellee was not a participant in, but the unconsenting victim of, the proscribed transactions.

There can be no doubt that whenever a principal confides to his agent money for the accomplishment of a particular object, the law impresses upon that money, for the benefit of the principal, a trust for the performance of the object contemplated, which can only be satisfied by its devotion to that object, unless the principal directs it otherwise. Mechem, Ag. § 780. This trust is not confined to the period during which the money remains in the possession of the agent, but follows the fund into the hands of whomsoever it may come, until it reaches the possession of one who has an equity superior to that of the principal; but such an one must be a bona fide holder for value, without notice of the trust; for, if the fund come into the hands of a third person receiving it without consideration, the principal may recover from such third person, as well as from the agent.

The application of this rule makes the appellant responsible to the appellee for the return of her money. The appellant is not a bona fide holder for value. An act that is criminal and void can not be said to be founded upon good faith, or a valuable consideration. The third person, holding the money, and defending against the owner, must show some better case than that he acquired the money in violation of law. There can be no doubt that in some form of action monies thus acquired are recoverable by the owner.

That equity affords a remedy seems equally clear. Being for the recovery of money which, in the hands of appellant, was in the nature of a trust, the suit is one of equitable assumpsit, and cognizable, therefore, in law, or in chancery. 11 Am. & Eng. Enc. Law (2d Ed.) p. 203. Especially is this true when the recovery depends upon an accounting, compulsory, tedious, and more or less intricate. In such a case it cannot be said that the appellee had a full, plain, and adequate remedy at law.

The cross appeal presents a more difficult question. The Central Stock and Grain Exchange, so far as the proof shows, had no knowledge that the monies deposited as margins were not Stichtenoth's, or that he was not authorized to deal with the Central Stock and Grain Exchange as he did. There is no element in the case of a wrongful appropriation by the Central Stock and Grain Exchange of Mrs. Bendinger's money, knowing it to be her money; and it seemed to the Circuit Court inequitable that, having paid back a part to the only person known to have had an interest therein, no credit should be allowed for the part repaid.

But, on the other hand, the decree of the Circuit Court, in respect to this repayment, works, in our opinion, an inequity to Mrs. Bendinger. The use of her money as margins was, so far as Stichtenoth is concerned, a clear trespass upon her rights, and, in this trespass, the Central Stock and Grain Exchange became a participant; for, the taking possession of the money as margins being illegal, the

attitude of the Central Stock and Grain Exchange to the trust money became, and remained, that of an intermeddler—the act of a person who had no lawful concern with the money, and no justification for its possession—and an intermeddler makes himself a trustee de son tort. Perry, Trusts (4th Ed.) § 245.

Now, the liability of a trustee de son tort dates from the moment of the trespass, that is, from the moment the money was diverted from its true destination. This was the moment the money was deposited as margins. The wrong to Mrs. Bendinger was then already done. A repayment, total or partial, to Stichtenoth, after three months, in the guise of profits, does not of itself make good the injury, for both the trust thus broken into, and the trustee himself, are no longer what they were before the trespass was committed. There is a wide chasm between the situation of Mrs. Bendinger, parting with her money to an agent in whom she confides, and who has not yet broken that confidence, and her situation when the agent had already broken faith, was already in the midst of losses swamping the funds, and had probably spent, from time to time, the monies repaid as if they were his individual profits. A trustee de son tort, either by direct act, or by unlawful intermeddling with the trust funds, is not freed of responsibility until there has been full restoration to the one injured, and any restoration that does not make the cestui que trust whole—that is, as applied to this case, that does not either replace the money, or replace her, with reference to the fund and the trustee, in the situation occupied before the trespass—is not full and complete. This conclusion may appear like a hardship to the Central Stock and Grain Exchange, but the hardship is traceable to its violation of law. A contrary ruling would be a hardship to Mrs. Bendinger; and in choosing on whom the hardship must fall, this case is without room for much hesitation.

The decree of the Circuit Court is affirmed, in so far as it is affected by the main appeal; and reversed, in so far as it is affected by the cross appeal; and the cause is remanded with instructions to enter a decree in favor of Mrs. Bendinger, against the Central Stock and Grain Exchange of Chicago, for the sum of seven thousand six hundred and forty-two dollars and fifty cents.

WOODS, Circuit Judge (concurring). I assent to the conclusion on the cross appeal because the appellee, in my opinion, had notice "that the monies deposited as margins were not Stichtenoth's"; and was therefore bound to inquire into the ownership of the money and into the authority of the agent to use it in the way he did, and, not having made due inquiry, is entitled to no credit for the sums returned.