**628**   GOLDEN SEAL ASSURANCE SOC. *v.* ÆTNA CASUALTY & S. CO.

Third Department, January, 1924.                    [Vol. 207

GOLDEN SEAL ASSURANCE SOCIETY, Respondent, *v.* THE ÆTNA CASUALTY AND SURETY COMPANY, Appellant.

Third Department, January 9, 1924.

Bonds — action on bond given to secure plaintiff against defalcation by secretary — use by secretary of funds collected in one month to cover shortage of month previous is not defalcation — real defalcation occurred when money belonging to plaintiff was originally converted.

A recovery cannot be had on a bond given by the defendant to secure the plaintiff against defalcation by its secretary, based on alleged defalcations in June and July, 1920, where it appears that the secretary used money collected during those months to make up a shortage for prior months, and that a part at least of the original conversion of plaintiff's funds occurred some years prior to 1920 and the shortage caused thereby was made up by using the moneys collected one month to pay the amount due the month previous; the real defalcation occurred when the money belonging to the plaintiff was originally converted.

APPEAL by the defendant, The Ætna Casualty and Surety Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Delaware on the 27th day of April, 1923, upon the decision of the court rendered after a trial before the court, a jury having been waived.

*William H. Foster* [*Gannon, Spencer & Michell* and *Charles E. Spencer* of counsel], for the appellant.

*Ives & Craft* [*C. R. O'Connor* of counsel], for the respondent.

COCHRANE, P. J.:

It is alleged in the complaint that the plaintiff is a fraternal beneficial corporation having its principal place of business at Roxbury, N. Y.; that about November 1, 1918, it appointed Matilda Knobloch secretary of two of its subordinate camps located in the city of New York, viz., Jewelers Manhattan Camp No. 12 and New York Camp No. 388, and also appointed the said Matilda Knobloch manager of its office in New York city; that among her various duties as such secretary and manager were the collection of the monthly payments on certificates of membership of the different members of said camps, keeping the books of said camps, receiving other moneys due the plaintiff and forwarding said moneys to the home office of the plaintiff at Roxbury; that the said Matilda Knobloch continued in the employ of plaintiff as such secretary and manager until on or about August 4, 1920; that about May 10,

1920, the defendant issued its surety bond or undertaking wherein it covenanted with the plaintiff that if the said Matilda Knobloch should fail to perform her duties as such secretary and manager and if by reason of her acts of fraud, dishonesty, forgery, theft, embezzlement or wrongful abstraction the plaintiff should suffer any pecuniary loss the defendant would pay to the plaintiff any loss it might sustain by reason thereof not exceeding $10,000; that at various times and more particularly during the months of June and July, 1920, the said Matilda Knobloch did collect and receive divers sums of money belonging to the plaintiff in the regular course of her employment as such secretary and manager in an amount over and above her commissions and salary of more than $9,000, which said amount she has fraudulently appropriated for her own purposes and uses and has failed to account for or pay to the plaintiff. Said bond or undertaking, a copy of which is attached to and made part of the complaint, discloses that the defendant insured the plaintiff against the dishonesty of said Matilda Knobloch during a period commencing January 17, 1920.

The findings contained in the decision herein follow quite closely the allegations of the complaint. It is found as follows: " That at various times and more particularly during the months of June and July, 1920, the said Matilda Knobloch did collect and receive divers sums of money, the property of the plaintiff, in the regular course of her employment, in an amount over and above her commissions and salary, of $9,058.56, that, said amount, the said Matilda Knobloch failed and neglected to render up, account for or pay over to the plaintiff, but fraudulently appropriated the same to her own purposes and uses."

The membership of the plaintiff was organized into about one hundred different " camps " each having its local secretary. Of two of these camps located in New York city as indicated by the complaint, Miss Knobloch was the secretary from November 1, 1918, until August 4, 1920. Miss Harriett W. George preceded her as such secretary from January 1, 1915, until November 1, 1918. One Mr. Kerr preceded Miss George as secretary and the latter was assistant bookkeeper from December, 1912, until January 1, 1915, when she became secretary. Her duties as such assistant bookkeeper are not specifically stated. The Chatham and Phenix National Bank of New York was the depository of the plaintiff's funds in that city. During the incumbency of Miss George as secretary the account of plaintiff in said bank was kept in her name as secretary and so continued for six or seven months after Miss Knobloch succeeded her. From that time

**630** Golden Seal Assurance Soc. *v.* Ætna Casualty & S. Co.

Third Department, January, 1924.            [Vol. 207

on such account was kept in the name of Matilda Knobloch, secretary.

According to the business methods of the plaintiff " transcripts," s ) called, consisting of large sheets containing the names of members belonging to any particular camp with the amount of their monthly dues, were made out each month at the home office in Roxbury and sent to the secretaries of these local camps in New York for collection. A peculiarity of the system was that membership dues collected by the secretary in any month were not payable at the home office until the tenth day of the second month thereafter, thereby affording an excellent opportunity for the replacement of converted dues in any month by the collections of the succeeding month.

The defendant does not question that there has been a defalcation in the funds of the plaintiff. Its contention is that such defalcation, except to the extent of a little more than $1,000, occurred prior to January 17, 1920, when its liability under its bond first arose. It claims that such defalcation was obscured or covered up from month to month by making the same apparently good each month by payments of dues collected in the succeeding month.

Plaintiff made out its case largely by the testimony of an expert accountant who summarized the results of his investigations in a written statement which was introduced in evidence by the plaintiff and is known as Exhibit A-11. From this statement it appears that when Miss Knobloch gave up her office on August 4, 1920, the monthly transcripts had all been paid in full at the home office down to and including May of that year and that the June and July transcripts for that year had been practically all collected from the various members and that for the most part there was no money on hand to pay these latter transcripts at the home office. Collections of the June and July transcripts had been used to pay the April and May transcripts. Hence the plaintiff contended and the court decided that the defalcation arose in these latter months.

The defendant's expert accountant based his testimony on books and papers submitted to him by the plaintiff including its Exhibit A-11. He testified that from the latter exhibit it appeared there was a shortage of nearly $9,000 " which covered payments for transcripts from November, 1918, to May, 1920, inclusive." He further testified that on November 1, 1918, when Miss George was succeeded by Miss Knobloch, there was a bank balance in the Chatham and Phenix National Bank of over $5,000 to the credit of H. W. George, secretary, which was nearly $5,000 less than was required to pay the September and October transcripts

of that year; that a check dated October 31, 1918, for over $5,000 was sent to the home office in part payment of the September, 1918, transcripts and was paid November 7, 1918, out of the account of H. W. George, secretary, in said bank; that another check dated December 1, 1918, for over $5,500 was sent to the home office in part payment of the October, 1918, transcripts and was likewise paid out of said account; that neither of those checks appeared in plaintiff's Exhibit A-11. He further testified that for the whole period of Miss Knobloch's term of office extending from November 1, 1918, to August 4, 1920, her total shortage was $3,926.40. He made the amount of her shortage accruing between January 17, 1920, and August 4, 1920, $1,011.49. He further testified there was a shortage on November 1, 1918, when Miss Knobloch took office, in the accounts of Miss George amounting to nearly $4,800. From this testimony it would appear that the defalcation had been a gradually increasing one; that it all with the exception of $1,011.49 occurred prior to the period covered by the defendant's bond; that much of it existed when Miss George was succeeded by Miss Knobloch and that it had been the invariable custom to use the plaintiff's money consisting of the receipts for monthly transcripts to pay up the deficiency existing during the prior month.

The plaintiff did not attempt to meet this testimony of the defendant. Its accountant testified as follows: " Q. Did you learn out of what funds these transcripts were paid? A. I did not know. Q. Did you know whether it had been the custom of this Company from the time that it took over these camps, that checks sent in to pay transcripts for one month had been paid out of funds collected on a subsequent month? [Objected to as incompetent, improper and immaterial, no evidence of any such custom. Overruled.] Q. Did your investigation disclose whether that had been done since a time prior to November, 1918? A. No, sir. Q. Prior to June 1, 1920? A. No, sir. Q. And it didn't disclose whether the collections during June and July were used, according to the regular method, in paying the amount of previous transcripts? [Objected to as immaterial, incompetent and improper. Overruled. Exception.] A. I couldn't say. Q. Have you any knowledge as to when the shortage, if any, occurred? A. I have knowledge that it occurred after May 30, 1920. She has made good her transcripts up to that date. Q. And no matter if they called upon her when she went into office to pay the assessment of two previous months the funds of which never came into her hands, you would still claim that the shortage occurred in June and July? A. Yes, sir." The treasurer of the plaintiff,

**632** GOLDEN SEAL ASSURANCE SOC. *v.* ÆTNA CASUALTY & S. CO.

Third Department, January, 1924.                    [Vol. 207

Mr. Bouton, testified that on November 1, 1918, neither the September nor October transcripts had been paid and it is undisputed that at that time the money on hand for the payment of said two transcripts was insufficient to the extent of approximately $5,000. Miss George as a witness for the defendant testified that on November 1, 1918, she was not short in her accounts but she also testified that during all the time concerning which she testified " the payment of the transcripts for one month required the funds collected for the subsequent month." If both statements were true it could only mean that a shortage existed when she took office January 1, 1915.

It seems to have been the theory of the court at the trial that Miss Knobloch became a defaulter when she failed to pay the June and July transcripts in 1920 notwithstanding the fact that the original defalcation may have occurred many months before. That was the theory urged by the plaintiff. Its counsel said in addressing the court: " I am going to assume for the purpose of this argument that Mr. Kerr when he was in office was a defaulter to the extent of $3,000. I am going to assume that for the purpose of this argument Miss George when she came along applied the moneys along as she received them and when she went out she was a defaulter to the extent of $3,000. And when Miss Knobloch came along she received the payments and I am going to assume when she got down all there was she found herself short and was unable to meet the transcript for June and July and I say under those circumstances the defendant is absolutely liable on his bond." That was an unsound proposition of law and on it rests the theory of the plaintiff's case. Payment of moneys due on the transcripts for one month with other moneys belonging to the plaintiff did not constitute a defalcation for which the defendant was liable. Moneys collected by Miss Knobloch on the June and July, 1920, transcripts were not withheld from the plaintiff but were paid to the plaintiff by Miss Knobloch. The real defalcation occurred when the money was originally converted. The process of paying monthly transcripts with the receipts of other monthly transcripts constituted merely a device for concealing the original defalcation. Such device did not obliterate the original theft. Plaintiff's funds were lost when the money was first abstracted and such loss has ever since existed. The impairment of its assets was just as much before June and July, 1920 as thereafter. The case has been tried by the plaintiff and decided on an erroneous theory and because thereof a new trial must result.

The judgment should be reversed on the law and facts and a new trial granted, with costs to the appellant to abide the event.

This court disapproves the fifth finding of fact in the decision of the trial court.

All concur.

Judgment reversed on the law and facts and new trial granted, with costs to the appellant to abide the event. The court disapproves of the fifth finding of fact in the decision of the trial court.