**FENNER et al. v. AMERICAN SURETY CO. OF NEW YORK.**

No. 2332.

Court of Civil Appeals of Texas. Waco.

Nov. 6, 1941.

Rehearing Denied Dec. 4, 1941.

Smithdeal & Lefkowitz and Shook & Shook, all of Dallas, for appellants.

Malone, Lipscomb, White & Seay, O. D. Montgomery, and F. W. Bartlett, Sr., all of Dallas, for appellee.

RICE, Chief Justice.

This suit was instituted in one of the district courts of Dallas county by the American Surety Company of New York, as plaintiff, against Fenner & Beane, a partnership, and numerous others as members of the partnership, as defendants, seeking recovery of certain sums of money which it was alleged Carl A. Lundelius, an employee of the American National Bank of Austin, Texas, unlawfully abstracted from said bank and paid to Fenner & Beane, and which sums of money the defendants were alleged to have received in bad faith. The claim of plaintiff was based upon the fact that it had executed to the American National Bank a fidelity bond which rendered it liable to the bank for the money so abstracted by Lundelius; that it had discharged its obligation to the bank and was subrogated to the latter's legal rights in the premises.

This case has been twice tried in the district court of Dallas county. In the first trial, resulting in a judgment for the plaintiff, the cause was submitted to the jury on the theory of negligence; that is, that there was evidence to support the view that the defendant partnership's agents in

charge of its Austin branch were in possession of such facts and circumstances as would put a person of reasonable prudence upon inquiry as to whether Lundelius wrongfully abstracted from the bank the funds with which he operated, and that such inquiry, diligently pursued, would have disclosed that he had done so. On appeal (opinion reported in 97 S.W.2d 741) the Dallas Court of Civil Appeals reversed and remanded the cause, holding that it was tried upon an erroneous theory, pointing out that under the Negotiable Instruments Act (§ 56, Article 5935, Vernon's Ann.Civ.Stats.) the test in negotiable instruments cases is good faith, and not diligence or negligence. The Supreme Court (133 Tex. 37, 125 S.W.2d 258) affirmed the judgment of the Dallas Court of Civil Appeals and directed that upon another trial the issue of bad faith should be submitted to the jury, if warranted by the pleadings and the evidence.

The pleadings of the parties having been amended, this case was again tried; the evidence on the second trial, we infer, being substantially the same as that developed on the first trial. The issues submitted to the jury on the theory of bad faith were warranted by the pleadings and the evidence, and, being answered favorably to the plaintiff, judgment was rendered against the defendants in favor of plaintiff for the amount of money unlawfully abstracted from the bank by Lundelius and paid to Fenner & Beane, less certain credits, the amount of the judgment, including interest, being $43,-544.35. From this judgment an appeal was perfected to the Dallas Court of Civil Appeals, and this case was thereafter, by order of the Supreme Court, transferred to this court.

The material facts relevant to this appeal, together with the general rules of law applicable thereto, have been so clearly and so succinctly set forth in the opinion of the Dallas Court of Civil Appeals, and also in the opinion of the Supreme Court, that it is deemed unnecessary to do more than refer to these opinions.

In its charge the trial court defined the term "bad faith" as follows: "You are instructed that the term 'bad faith', as used in this charge, means that the person taking the instrument must have had knowledge of such substantial facts and circumstances as to create in his mind a suspicion that there was something wrong with the title of the person from whom he takes it,

to the instrument itself, or to the money represented by such instrument, combined with an intentional disregard of and refusal on the part of the taker of the instrument to learn the facts from the means of knowledge which he knows are at hand."

By numerous assignments of error, on which are predicated twenty-four propositions of law, appellants attack the correctness of the foregoing definition. In our opinion, this definition is not subject to the criticisms made, and we therefore overrule these assignments of error.

Article 5935, Section 56, provides: "To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

In the first appeal of this case, 133 Tex. 37, 125 S.W.2d 258, 260, the Supreme Court says: "The controlling principle applicable in the present case is stated in West v. First Baptist Church of Taft, 123 Tex. 388, 71 S.W.2d 1090, 1097, as follows: 'The consummation of the purchase of a negotiable instrument with knowledge of suspicious circumstances sufficient only to put an ordinarily prudent person upon inquiry would convict the purchaser of negligence, not of dishonesty. To serve as evidence to support a finding of bad faith, the unheeded suspicious circumstances must be of a substantial character and so strong that bad faith rather than merely negligence can reasonably be inferred from them.' "

The Supreme Court further said: "There is substantial testimony in the present record from which it may be inferred reasonably in the light of surrounding circumstances that the purchaser of the paper acted in dishonest disregard of the rights of the bank."

The term "bad faith", as used in Section 56, Article 5935, Vernon's Ann. Civ.Stats., has not been defined by statute; "but left as a question of fact under the peculiar circumstances of each case; bad faith, like fraud, not being capable of exact definition." Joyce Defenses to Commercial Paper, 2nd Ed., par. 695, p. 980.

It appears to have been decided by the great weight of authority that wilful ignorance is the equivalent of bad faith; and that bad faith may be shown by a wilful disregard of and refusal to learn the

facts when available and at hand. Joyce Defenses to Commercial Paper, 2nd Ed., § 694, p. 976; In re Hopper-Morgan Co., D.C., 156 F. 525, and authorities cited on page 530.

In the case of Murray v. Lardner, 2 Wall. 110, 121, 17 L.Ed. 857, the Supreme Court of the United States said: "The rule may perhaps be said to resolve itself into a question of honesty or dishonesty, for guilty knowledge and wilful ignorance alike involve the result of bad faith. They are the same in effect. Where there is no fraud there can be no question. The circumstances mentioned, and others of a kindred character, while inconclusive in themselves, are admissible in evidence, and fraud established, whether by direct or circumstantial evidence, is fatal to the title of the holder." See, also, West v. First Baptist Church of Taft, 123 Tex. 388, 71 S.W.2d 1090; Daniel v. Spaeth, Tex.Civ. App., 168 S.W. 509; Hotchkiss v. National Shoe & Leather Bank, 21 Wall. 354, 22 L.Ed. 645, 649; First Nat. Bank v. Stover, 21 N.M. 453, 155 P. 905, L.R.A.1916D, 1280, Ann.Cas.1918B, 145; 1 Daniel Nego. Inst., 6th Ed., § 776; Jones v. Gordon, L.R. 2 App.Cas. 627; Kentucky Rock Asphalt Co. v. Mazza's Adm'r, 264 Ky. 158, 94 S.W.2d 316, 317; Merchants' & Miners' Bank v. Gaujot, 102 W.Va. 643, 136 S.E. 199; Clark v. Roberts, 206 Mass. 235, 92 N.E. 461; 8 C.J. 505; 10 C.J.S., Bills and Notes, § 324, p. 820.

■ Construing the court's definition of the term "bad faith" as a whole, and we understand it to be our duty so to do (24 T.J. § 59, p. 527), we are of the opinion that it is a substantially correct definition of the term as applied to the facts of this case; and imposes no greater burden on appellants than that imposed by law. We are further of the opinion that the words "suspicion" and "something wrong," as used in said definition, are words of ordinary, commonly accepted meaning, and are not legal or technical terms requiring definition by the court. The context of the court's definition clearly discloses the meaning and effect of each of said terms. It occurs to us that the ordinary juror, drawn from the rank and file of men, could not fail to realize and fully comprehend that one in whose mind there has been created a suspicion, based upon his knowledge of substantial facts and circumstances, that there is something wrong with the title to a negotiable instrument, or the money represented thereby, and who, in spite of such suspicion, intentionally disregards and refuses to learn the facts by means of knowledge which he knows are at hand, is guilty not only of wilful ignorance but also of dishonest disregard of the rights of others and necessarily of bad faith. As we understand section 56 of Art. 5935, supra, notice of an infirmity in a negotiable instrument or defect in the title of the person negotiating same, which vitiates the transactions, must fall in one of two distinct classifications: (1) the person to whom it is negotiated must have actual knowledge of the infirmity or defect; or (2) knowledge of such facts that his action in taking the instrument amounts to bad faith. Under the first classification actual knowledge of the infirmity or defect makes the taker a party to the fraud and convicts him of outright dishonesty; under the second classification knowledge of such facts on the part of the taker convicts him of bad faith when the unheeded suspicious circumstances in his mind are of such a substantial character and so strong that bad faith rather than negligence can be reasonably inferred from them. In other words, bad faith may be inferred from unheeded suspicious circumstances of a substantial character, although the evidence adduced is insufficient of itself to support a finding that the taker had actual knowledge of the infirmity of the instrument or the defect in the title of the person negotiating the same. Under all the facts and circumstances, the question of bad faith was one of fact for the jury. In the light of the statute and after careful study of the cases of West v. First Baptist Church of Taft, supra, and the opinion by the Supreme Court in this case, supra, we are of the opinion that the definition of bad faith in the court's charge, as applied to this case as developed, is substantially correct. 1 Dan.Nego. Instrument, 6th Ed., § 776; First National Bank v. Stover, 21 N.M. 453, 155 P. 905, 913, L.R.A.1916D, 1280, Ann.Cas.1918B, 145; In re Hopper-Morgan Co., D.C., 156 F. 525, and authorities above cited.

■ We overrule appellants' assignments of error to the court's charge based on the failure to affirmatively instruct the jury as to the meaning of the term "holder in due course", and the failure of the court to submit "good faith" as the converse of "bad faith". The term "holder in due course" was not used in the court's charge. "Bad faith" has been defined to be the antithesis of "good faith". Fenner &

Beane v. American Surety Co., Tex.Civ. App., 97 S.W.2d 741. The court gave the jury a correct affirmative charge defining "bad faith"; it was not incumbent on the court to give a charge on "good faith", which would have been a mere negative statement of the term "bad faith". There was no issue submitted or requested as to whether appellants were holders in due course; hence it was not necessary for the court to charge the jury what constitutes a holder in due course, and what circumstances would not be in bad faith. Under the circumstances, a charge as to the requisites to make one a holder in due course would have been a general charge. Breeding v. Naler, Tex.Civ.App., 120 S.W.2d 888; 41 T.J. 1181; Article 2189, Vernon's Ann.Civ.Stats.; Wichita Falls & Oklahoma Ry. Co. v. Pepper, 134 Tex. 360, 135 S.W. 2d 79.

By their 26th proposition, based upon appropriate assignments of error, appellants contend that the checks described in several of the special issues were Lundelius' own checks, drawn on the Austin National Bank, payable to Fenner & Beane, and that the latter having accepted the same before they were overdue and having paid full value therefor, it was legally impossible that there was any defect in the title of Lundelius to said checks, and therefore impossible for Fenner & Beane to have any notice of a non-existing defect in Lundelius' title thereto, and therefore impossible for appellants' action in accepting such checks to amount to bad faith. They further contend that the jury's finding that such checks were accepted in bad faith does not establish any ultimate issue of fact which would defeat defendants' title to such checks, or on which liability against defendants could be founded on account of their acceptance of such checks. They further contend that the amounts involved in such transactions represent more than the amount of the judgment awarded plaintiff upon the whole case, and it was error not only to render judgment against defendants which took into account the amounts involved in said transactions, but it was error to render any judgment at all against defendants because without including said transactions, plaintiff was awarded more than the amount it lost on account of all the transactions of Lundelius.

When Lundelius first began trading with Fenner & Beane he paid for the first four purchases of stock by three drafts of American National Bank of Austin drawn on the First National Bank of Houston, and by one draft of American National Bank drawn on the Chase National Bank of New York. These drafts aggregated $57,477.50, and were dated November 4, 12, 18 and 19, 1929, respectively, and all of same were unlawfully abstracted from the American National Bank by Lundelius. The New Orleans office of Fenner & Beane became dissatisfied with the delay occasioned by sending the above mentioned drafts to the New Orleans office for Lundelius, and instructed the Austin branch to thereafter deposit the drafts of Lundelius either in the American National Bank or the Austin National Bank, both in Austin, Texas. Lundelius was informed of these instructions, and it was then determined by him and the agents in charge of the Austin branch of Fenner & Beane to thereafter deposit Lundelius' payments to Fenner & Beane to the latter's account in the Austin National Bank, and the remittances or payments from Lundelius to Fenner & Beane were thereafter so handled. About the same time Lundelius opened up a personal account with the Austin National Bank, and in several instances drew checks on this account payable direct to Fenner & Beane. The first deposit to Lundelius' personal account in the Austin National Bank, as revealed by this record, was in the amount of $33,000, made November 22, 1929, and was the amount which the Austin National Bank was instructed to pay Lundelius by telegram from Fenner & Beane at New Orleans, dated November 21st. The record further shows that the deposits made to Lundelius' credit in the Austin National Bank came from only two sources: (1) money abstracted by him from the American National Bank and deposited in said account; (2) money paid to him by Fenner & Beane as a result of his trading through said firm. The record further reveals that all the money paid by Lundelius to Fenner & Beane came likewise from only two sources; (1) directly from the American National Bank, being drafts or cashier's checks which Lundelius abstracted from said bank and which were deposited to the credit of Fenner & Beane; (2) direct from Lundelius' personal account in the Austin National Bank on checks drawn by Lundelius, payable to Fenner & Beane. The $33,-000 item which was the first deposit to the credit of Lundelius' personal account in the Austin National Bank represented a re-payment by Fenner & Beane to Lundelius of

a part of the $57,477.50 which Lundelius had theretofore abstracted from the American National Bank on the four items inquired about in the first four special issues submitted to the jury, and which four drafts the jury found that Fenner & Beane acquired in bad faith.

After Lundelius' account with the Austin National Bank was opened, the account of Fenner & Beane with said bank showed various deposits to the credit of said account as a result of Lundelius' abstractions, some of these deposits being personal checks of Lundelius, payable to Fenner & Beane and drawn on the Austin National Bank, while other deposits were the proceeds of the cashier's checks or drafts of the American National Bank abstracted by Lundelius and deposited direct to the credit of Fenner & Beane. During the course of dealings between Lundelius and Fenner & Beane, and after the account with the Austin National Bank was opened, the record reveals that in several instances Fenner & Beane made payments to Lundelius; that some of this money was paid by Lundelius to the American National Bank to cover previous abstractions, and that subsequently he would abstract additional money from said bank, which in turn he paid to Fenner & Beane either directly or by first depositing the money to his personal account in the Austin National Bank and then issuing Fenner & Beane his personal check against the same. The record shows without dispute that Nixon and Ellis, agents of Fenner & Beane in charge of the Austin branch, knew from the beginning that Lundelius was an employee of the American National Bank, and that Lundelius did not wish his employer to know that he was trading with Fenner & Beane. Nixon testified that he was suspicious of Lundelius from the beginning, and that he communicated his suspicions to Ellis. This was denied by Ellis. The record further shows that Fenner & Beane, during the time that Lundelius was trading with said firm, had in effect a rule prohibiting a bank employee from trading with the firm, unless with the written permission of the bank for which he was working, and that this rule was not followed in Lundelius' case. The jurors in this case could fairly draw the inference from the above, and from other facts and circumstances revealed by the record, we think, that the opening of Lundelius' account with the Austin National Bank was done with the connivance and knowledge of the agents of appellants in charge of the Austin branch, for the purpose of enabling Lundelius to carry on his transactions with Fenner & Beane in such a manner that the American National Bank would not discover that Lundelius was trading; and that at the time said account was so opened by Lundelius and on the occasions that the different checks and drafts were received from him by appellants, the latter's agents were in possession of such material facts and circumstances as to taint their actions in respect to the same with bad faith.

In the light of the facts and circumstances as revealed by this record, we believe that a jury would be warranted in concluding that the agents of appellants were charged with knowledge that there was something wrong with the money represented by the checks and instruments inquired about in the special issues hereinabove referred to; that the funds represented by Lundelius' checks to the defendants were dishonestly acquired; and that these funds were in truth and in fact not the property of Lundelius but were the property of the American National Bank, although temporarily in the keeping of its absconding employee as trustee ex maleficio.

By their twenty-seventh and twenty-eighth propositions appellants complain of the action of the trial court in sustaining the objection of appellee to the introduction in evidence of a letter dated March 17, 1930, from R. W. Nixon to Charles E. Fenner. This letter was identified by Fenner as being a letter received by him from Nixon in reply to one theretofore written to the latter by Fenner. This letter was offered in evidence generally and in its entirety and the record shows that counsel for appellants declined to allow either counsel for appellee or Nixon, while the latter was being interrogated in respect to the letter, the opportunity to read the letter or to inspect the signature. This letter is quite lengthy and required five pages of the statement of facts for its transcription. Nixon did not testify in person. His oral deposition was taken. Some, but not all of the direct interrogatories propounded to Nixon and his answers thereto were offered in evidence and read to the jury by the plaintiff; the defendants thereupon read to the jury the remainder of such deposition, including not only all of the cross-interrogatories propounded to Nixon by the appellants and the witness' answers thereto, but also the interrogatories and answers

of the witness to the interrogatories propounded to Nixon by counsel for a third party to the law suit. It was the theory of appellants that some portion of the letter of March 17th written by Nixon and offered, as stated above, in its entirety, would serve to contradict and impeach some portion of his testimony given by deposition. If the letter had been properly proven up and if a predicate for the impeachment of Nixon had been properly laid (all of which is doubtful because he was never shown the letter of March 17th nor allowed to read it or identify it, nor was he given the opportunity to explain its contents), we would overrule these assignments because appellants offered the letter in its entirety and did not offer the particular portion of the letter which would serve to impeach the witness. This letter contained statements of opinions and conclusions of the witness which were clearly inadmissible for any purpose. 70 C.J. § 1303, p. 1126; Id., § 1310, p. 1130; Texas Company v. Andrade, Tex.Civ.App., 52 S.W.2d 1063; Kincaid v. Chicago, R. I. & G. Ry. Co., Tex.Civ.App., 119 S.W.2d 1084; Missouri, K. & T. Ry. Co. v. Washburn, Tex.Civ.App., 184 S.W. 580, error refused; Hill v. Taylor, 77 Tex. 295, 14 S.W. 366; Robinson v. Stuart, 73 Tex. 267, 11 S.W. 275; Buchanan v. Williams, Tex.Civ.App., 225 S.W. 59.

Appellants complain of the action of the trial court in excluding, on objection, the testimony of Leigh Ellis, given by deposition, that: "Mr. Nixon never made any remark to me that would imply or intimate to me that he (Lundelius) had confessed to him (Nixon) that Lundelius was taking money from the American National Bank, or any other bank, and using the same to trade through Fenner & Beane." And further, because the court excluded, on objection, the testimony of the same witness that he had never called Mr. Charles E. Fenner, or any other person in the office of Fenner & Beane in New Orleans on the telephone and advised him or them that Nixon had told witness that Lundelius was using the bank's money with which to trade through Fenner & Beane; and that no such conversation ever occurred. And further, because the court excluded, on objection, the testimony of the same witness that Nixon had never told or suggested to witness that Lundelius was taking funds from any bank to use in trade through Fenner & Beane, and that witness had never communicated such fact by wire, telephone,

letter or otherwise to anyone, as he was not aware of the fact.

Appellants contend that the excluded testimony was admissible (1) as independent evidence to show Ellis' state of mind; (2) the information Ellis had of the transactions going on; (3) that the information was not communicated to Mr. Fenner; and (4) for the purpose of discrediting, impeaching and contradicting the testimony of Nixon and McCook.

Plaintiff had not introduced any evidence from Nixon, or any other person, showing, or tending to show, that Lundelius had ever confessed to Nixon that he was using the money of the American National Bank in his transactions with Fenner & Beane, nor had plaintiff introduced any evidence to the effect that Nixon had informed Ellis that Lundelius had made such a confession to him, or that Ellis had phoned or wired Mr. Fenner to that effect. The evidence as to the purported confession of Lundelius to Nixon was given by Nixon in answer to cross-interrogatories propounded to Nixon by appellants. These cross-interrogatories and the answers of Nixon thereto were introduced in evidence by appellants. In so doing, appellants elicited from the witness evidence in respect to new and independent matters, which were not gone into, directly or indirectly, by plaintiff. We hardly see how this evidence was relevant for the purpose of showing either the state of mind of Mr. Ellis, or the information he had of the transactions going on, nor that the information was not communicated to Mr. Fenner. Mr. Ellis was interrogated at length as to his state of mind in respect to Lundelius and his honesty, and testified that he had no reason to suspect and did not suspect Lundelius. He further testified that Nixon never did tell him that he suspected Lundelius, and that he never at any time learned from any source that Lundelius was obtaining money from the American National Bank. He further testified that he never had a telephone conversation with Nixon about Lundelius' account, either in the daytime or at night. The only part of Ellis' testimony which was excluded was in respect to the alleged confession of Lundelius to Nixon, which was brought into the trial for the first time by appellants when they introduced the answers of Nixon to cross-interrogatories propounded to the latter by appellants' counsel. We do not believe that the proffered testimony was admissible for

the purpose of contradicting or impeaching either Nixon or McCook, because, as to McCook, the proffered testimony did not refer to the telephone conversation in reference to which Mr. McCook testified. If it was admissible to impeach McCook, its exclusion would not be reversible error because Ellis did testify that Nixon never did call him on the telephone at any time and discuss with him the Lundelius account. Said testimony so excluded was not admissible to impeach or contradict Nixon because that part of Nixon's testimony which appellants were attempting to impeach by the excluded evidence was read in evidence by appellants. In so doing appellants injected into the case new and independent matter, and in respect to such new matter, appellants made Nixon their witness. It has been held that where a witness is examined on behalf of both parties, he is, for the purpose of impeachment, the witness of each to the extent of the new matter elicited by that party. In re Campbell's Will, 100 Vt. 395, 138 A. 725, 54 A.L.R. 1374; Gaines v. State, Tex.Cr.App., 53 S.W. 623; Texas Pipe Line Co. v. Higgs, Tex.Civ.App., 243 S.W. 633, error refused; 28 R.C.L. p. 465; 15 T.J. p. 96; 17 T.J. pp. 928, 929, 930; Western Union Telegraph Co. v. Lovely, 29 Tex.Civ.App. 584, 69 S.W. 128; Texas & P. Ry. Co. v. Gay, 88 Tex. 111, 116, 30 S.W. 543; Willson v. Kuhn, Tex.Civ.App., 96 S.W.2d 128; Compagnie Des Metaux Unital v. Victoria Mfg. Co., Tex.Civ.App., 107 S.W. 651, point page 653; Butcher v. State, 104 Tex.Cr. R. 464, 284 S.W. 219.

Appellants argue that reversible error was committed by the court in connection with the exclusion of the testimony of Leigh Ellis hereinabove set out, because the court stated to appellants' counsel in the presence of the jury: "That made him your witness"; and on exception by appellants, the court said: "I said you introduced him as your witness."

We overrule this assignment. The record shows that when appellants offered this testimony and appellee objected thereto, that an argument was made by counsel for both appellants and appellee as to the admissibility of said evidence to the court in the presence of the jury, in which argument appellee was contending that since appellee had not introduced any evidence in respect to the purported confession which Nixon testified Lundelius made to him, and that since all the evidence in respect to

such purported confession was injected into the case by appellants as new matter, that this made Nixon appellants' witness as to such confession, and that therefore appellants had no right to impeach such portion of Nixon's testimony by the proffered testimony of Leigh Ellis. The record does not show that appellants requested the court to retire the jury during the argument. Appellants' attorneys were arguing to the contrary, and it was in connection with this argument made to the court in the presence of the jury that the court stated to appellants' counsel: "That made him your witness" and "I said you introduced him as your witness."

The statements of the court, in view of the arguments then being made to the court by the attorneys for both appellants and appellee in respect to the admiissibility of the evidence, were but explanations of the court's ruling, made by the court to the attorneys and not to the jury, although in the latter's presence; and furthermore, the statements so made by the court were a correct statement of the law in respect to the matters then before the court. In our opinion, the language used by the court and excepted to was not a comment on the credibility of the witness or the weight to be given his testimony. We are also of the opinion that the jurors, in whose presence the arguments were made to the court by the attorneys, seeking on the one hand to introduce the evidence and on the other to have the same excluded, understood that the court, in using the language above excepted to, meant only to explain to the attorneys that he was excluding such proffered testimony because of the fact that appellants had made Nixon their witness in respect only to the purported confession of Lundelius, in reference to which appellants were then offering the testimony of Leigh Ellis for impeachment purposes. Kaack v. Stanton, 51 Tex. Civ.App. 495, 112 S.W. 702, point page 706; Schelb et al. v. Sparenberg, Tex.Civ.App., 111 S.W.2d 324; Black v. Wilson, Tex.Civ. App., 187 S.W. 493, point page 495; The Oriental v. Barclay, 16 Tex.Civ.App. 193, 41 S.W. 117; Texas Co. v. Burkett, Tex.Civ. App., 255 S.W. 763, point page 767; Texas Indemnity Co. v. Dean, Tex.Civ.App., 77 S.W.2d 748.

Appellants contend that the evidence conclusively showed that the maximum amount that Lundelius embezzled from the American National Bank was

$168,237.50; that the evidence further showed that Fenner & Beane paid Lundelius and the American Surety Company $187,115.10; and that no issue being submitted to the jury identifying all the money paid by Lundelius to Fenner & Beane as being the money of the American National Bank, and no issue finding that Fenner & Beane did not return to Lundelius all the money of the American National Bank received by them from him, there is no basis, either in the verdict of the jury or in the uncontradicted evidence, for the court to find that Fenner & Beane did not return to Lundelius all of the proceeds of all of his embezzlements which came to their hands. We overrule this assignment. The undisputed evidence shows that appellants received from Lundelius a total of $214,257.50, and that all of this came from funds he embezzled from the American National Bank. The undisputed evidence further shows that of this amount appellants returned to Lundelius the sum of $187,115.10, leaving a discrepancy of $27,142.40. The undisputed evidence further shows that of the $187,115.10 returned to Lundelius by appellants, Lundelius paid to the American National Bank the total sum of $141,095.73, leaving a balance due and unpaid to the bank of $27,141.77. The jury found that all of the funds received by appellants from Lundelius were received by them in bad faith. Therefore, appellants could not discharge their obligation to the American National Bank by paying to Lundelius the money, or a part thereof, which they had received in bad faith from Lundelius, unless Lundelius in turn paid such amounts to the bank. Central Stock & Grain Exch. v. Bendinger, 7 Cir., 109 F. 926, 56 L.R.A. 875; Fidelity & Deposit Co. v. Peoples Bank, 8 Cir., 44 F.2d 19; United States Fidelity & Guaranty Co. v. People's Bank, 127 Tenn. 720, 157 S.W. 414; Glasgow v. Nicholls, 124 Wash. 281, 214 P. 165, 35 A.L.R. 419.

Appellants urge that the American National Bank having filed with the American Surety Company its itemized claim, in which there were set out specific items alleged to have been abstracted and embezzled by Lundelius, and the American Surety Company having paid such claim as filed and having taken a subrogation and assignment of the specific claim, it must recover upon said claim and not upon some other claim; and that therefore there was a fatal variance in the proof as to the claim assigned to the American Surety Company and that to which the evidence was addressed. We overrule this assignment. Upon the payment by appellee to the American National Bank of the amount of the loss sustained by it by reason of Lundelius' breach of faith, as it was required to do by the terms of its fidelity bond, the bank assigned to appellee all of its rights in the premises, and appellee, by this assignment as well as in equity, was subrogated to the rights and remedies of the bank for the recovery of its loss. In seeking recovery of this loss appellee's rights were not circumscribed and limited to the items shown by the bank's proof of loss. During the time that Lundelius was short with the American National Bank he was covering up these transactions from day to day. (In effect, he was each day stealing from Peter to pay Paul). The bank, and therefore the appellee as its assignee and by virtue of its rights of subrogation, had the right to recover from anyone legally liable therefor the actual loss sustained by the bank. The actual loss to the bank accrued on the days that Lundelius took the money from the American National Bank by means of the different drafts and cashier's checks which he abstracted and used in his trades with appellants. A finding of fact by the jury that Lundelius embezzled a specific sum or item of money, or a finding as to the total of the amounts embezzled by Lundelius, was unnecessary. The items embezzled and the dates of such embezzlements, together with the aggregate amounts so embezzled, were shown by undisputed testimony. Royal Indemnity Co. v. North Texas Nat. Bank, Tex.Com.App., 25 S.W.2d 822; Aetna Casualty & Surety Co. v. First Trust & Savings Bank, 5 Cir., 62 F.2d 316; First Nat. Bank of Temple v. Continental Casualty Co., 5 Cir., 100 F.2d 308; Fidelity & Deposit Co. v. People's Bank of Sanford, 4 Cir., 72 F.2d 932; Golden Seal Assurance Society v. Aetna Casualty Co., 207 App.Div. 628, 202 N.Y.S. 674; Royal Indemnity Co. v. American Vitrified Products Co., 117 Ohio St. 278, 158 N.E. 827, 62 A.L.R. 407.

Appellants urge that the court erred in all events in rendering judgment against them for any sum in excess of $7,362.50, this being all the money they kept and retained out of the money delivered to them by Lundelius, which sum was the agreed commissions to which they were entitled. We overrule this assignment for the reasons hereinabove stated.

■ By assignment of error No. 226 appellants contend that the judgment of the court is excessive by the sum of $450, which amount appellants paid appellee on January 20, 1930, on the order of Lundelius, and which amount appellants insist appellee was required to credit on its claim against them. We overrule this assignment. The only testimony in respect to the $450 item was given by Charles E. Fenner, to the effect that on January 9, 1930, Fenner & Beane wired the Austin National Bank to pay Lundelius $34,473.36, which at that time would have closed the account existing between Fenner & Beane and Lundelius; that on January 20, 1930, Fenner & Beane received the sum of $450 as a dividend on 1,500 shares of General Motors stock, which dividend was due to Lundelius; that this sum of $450 was credited by Fenner & Beane to Lundelius' account and later paid by Fenner & Beane on the order of Lundelius to the American Surety Company. The evidence shows that prior to the time Lundelius began trading with Fenner & Beane he was short in his accounts with the American National Bank in the sum of $18,000, which sum he had not repaid on January 20, 1930. This loss was in addition to the loss of $27,141.77 sustained in Lundelius' trading with appellants, making the entire amount which appellee paid the bank under its bond on Lundelius' account the sum of $45,081.28.

It is not shown that Lundelius or Fenner & Beane made any condition or request as to how this sum of $450 should be applied, and appellee applied it on the oldest indebtedness of Lundelius to the bank, that is, the shortage of $18,000. This money was the property of Lundelius, collected for him by Fenner & Beane after their transactions were closed, and having been paid to the American Surety Company unconditionally, we think the latter had the legal right to apply it as it did.

■ We overrule appellants' assignment of error to the effect that the court erred in rendering judgment against appellants in that the evidence showed that Lundelius paid to the bank the sum of $800 in cash after his defalcation was discovered, for which he received no credit and which sum was not taken into account in rendering the judgment complained of. It is undisputed from the record that Lundelius was given credit for this sum of $800 in cash paid by him to the bank, and that after this credit was given he was still short with the bank in the sum of $45,081.-28, the aggregate amount of his shortage prior to the time he began trading with Fenner & Beane and the shortage which accrued after he began trading with them. There is no evidence in the record as to where this sum of money came from, nor is any reason advanced which would preclude the bank from crediting this sum on Lundelius' oldest indebtedness to the bank.

Appellants contend that this case should be reversed because, they contend, the argument of one of appellee's attorneys to the jury was improper and prejudicial, in that said attorney argued to the jury as follows:

"Certainly he (Lundelius) failed by $27,141.77 to return to the American National Bank the money he got. He paid to Fenner & Beane during the life of this account $214,257.50, and it is shown through this account that is the sum total of these various items that you are asked about. Now, if you answer every issue that these items were taken in bad faith, that does not mean the plaintiff will get a judgment against Fenner & Beane."

Appellants' bill of exception is qualified by the court by setting forth part of the argument of appellants' counsel to which appellee's counsel was replying in making the argument complained of. The court's qualification also sets forth the argument of appellee's counsel immediately preceding and immediately following the language complained of by appellants, so as to give the context and meaning of that portion of the argument excepted to. In reference to the argument above set forth, and which appellants in their brief ascribe to appellee's counsel, the court says in its qualification:

"I cannot certify that the language above quoted is correct, because I do not remember. However, I do find as a fact, from the evidence which was offered on the motion for rehearing, and which appears set forth in the statement of facts, that the argument made by Mr. Malone was substantially as follows:

" 'Now, if you answer every issue that the items were taken in bad faith, that does not mean the plaintiff will get a judgment against Fenner & Beane in that amount' or words to that effect."

■ ■ It is readily apparent that the language which the court finds was used by appellee's counsel in his argument was substantially different from that ascribed to

such counsel by appellants in their assignment of error above set forth. In our opinion, the argument of appellee's counsel as set forth in the trial court's qualification to the bill of exception was not improper, and we overrule this assignment of error. This assignment of error in our opinion is without support in the record in the absence of a bill of exception showing affirmatively that the argument complained of was made by appellee's counsel. St. Paul Mercury Indemnity Co. v. Mullins, Tex.Civ.App., 73 S.W.2d 932; Nacogdoches Grocery Co. v. Rushing, Tex.Civ.App., 82 S.W. 659; Ramsey v. Hurley, 72 Tex. 194, 12 S.W. 56. Appellants, having accepted and filed this bill of exception as modified by the court, are bound by the qualification. Petroleum Casualty Co. v. Bristow, Tex.Civ.App., 35 S.W.2d 246, 247; 3 T.J. § 464, p. 657.

We have considered each of appellants' two hundred and forty-six assignments of error, and being of the opinion that they are without merit, each of same is accordingly overruled, and the judgment of the trial court is therefore affirmed.