## American Surety Company of New York v. Charles E. Fenner et al.

No. 7206.  Decided March 1, 1939.
Rehearing overruled April 5, 1939.
(125 S. W., 2d Series, 258.)

*Malone, Lipscomb, White & Seay, F. W. Bartlett,* and *Thornton & Montgomery,* all of Dallas, for plaintiff in error, American Surety Company of New York.

Knowledge is imputed to defendants in error (brokerage company) of the facts learned by their duly authorized manager in the transaction of business entrusted to his care, and which business has since been consummated, notwithstanding it may have been done in violations of private instructions; and especially is this true where defendants in error have retained the profits derived from the transactions in question after being fully appraised that such private instructions have been violated. Manhattan Life Ins. Co. v. Stubbs, 234 S. W. 1099; Curtis, Collins & Holbrook Co. v. United States, 262 U. S. 215, 43 Sup. Ct. 570, 67 L. Ed. 956; Industrial Acceptance Corp. v. Corey, 29 S. W. (2d) 978; State Bank of Binghamton v. Bache, 293 N. Y. S. 667.

Even if a case be decided in the lower court upon an erroneous theory, where the correct theory is not inconsistent with the pleadings and the evidence in the lower court, the ap-

pellate court, if it cannot uphold the judgment of the lower court, will remand the cause to be tried upon the correct theory. American Surety Co. v. Shaw, 69 S. W. (2d) 47; Waldo v. Galveston, H. & S. A. Ry. Co. 50 S. W. (2d) 274; Southland Greyhound Lines v. Frausto, 69 S. W. (2d) 497.

*Smithdeal, Shook, Bowyer & Lefkowitz,* of Dallas, for defendants in error, Charles E. Fenner et al.

Case having been tried on the theory that knowledge on the part of appellant's agent of facts and circumstances sufficient to put a person of ordinary prudence, situated as they were, upon inquiry as to whether or not Lundelius was paying for his stock purchases with funds wrongfully obtained from the bank, where such inquiry would have disclosed the facts, were equivalent in law to knowledge on the part of appellants of the misappropriation and made them liable for as much of said funds as they received, and the surety is not entitled to a remand of the case in order that it might present another and different theory. Spurlock v. Zaring, 270 S. W. 1099; Askey v. Power, 36 S. W. (2d) 446; Ormsby v. Ratcliffe, 117 Texas 242, 1 S. W. (2d) 1084.

MR. JUDGE TAYLOR of the Commission of Appeals, delivered the opinion for the Court.

This is a suit filed by American Surety Company of New York under its subrogation rights as surety against Fenner & Beane, a stock brokerage firm. The trial court upon findings made by the jury rendered judgment in favor of the surety against Charles E. Fenner and A. C. Beane, and eight others as members of the firm. The Court of Civil Appeals reversed and remanded the cause. 97 S. W. (2d) 741. Both plaintiff and defendants applied for writs of error. The application of plaintiff was granted on the alleged conflicts, and defendants' was granted because of granting plaintiff's.

The surety prior to instituting the suit paid the claim of the American National Bank of Austin for losses sustained by it on account of the wrongful abstraction of funds by Carl A. Lundelius, one of its employees. It is alleged that the funds abstracted by Lundelius were used by him in trading on the stock market through the local office of Fenner & Beane. The office was in the charge of Leigh Ellis, formerly a director of the bank, and R. W. Nixon, the brokerage firm's "customer's man."

Lundelius began trading on the market on November 4,

1929. The drafts, cashier's checks and other items used by him in his transactions were regular on their faces. The opinion of the Court of Civil Appeals states the manner and result of his operations as follows:

"Items of exchange would come in from other banks to the American National Bank to be collected. Lundelius would collect these items but would withhold remittances and issue the drafts and cashier checks either to himself or to Fenner & Beane. These items of exchange would be presented to Pfaefflin (an official whose duty it was to sign same) and were by him signed. When other items came in for collection Lundelius would collect them and remit for the items that had already come in. The total amount of the items abstracted by this manner by Lundelius was $168,237.50. When available deposits had been credited, Lundelius was short in his account the sum of $77,135.94. When other funds available for this purpose had been credited, there was left a shortage of $45,081.28. Appellee, after some available credits were made, paid to the American National Bank the sum of $31,241.77, and instituted this suit against appellee to recover the amount paid."

The trial court submitted fifty-two special issues to the jury on the negligence theory, that is, that there was evidence to support the view that the firm's agents in charge of its Austin branch were in possession of such facts as would put a person of reasonable prudence upon inquiry as to whether Lundelius abstracted from the bank wrongfully the funds with which he operated, and that such inquiry diligently pursued would have disclosed that he had done so.

■ The opinion of the Court of Civil Appeals correctly points out in the language of Section 56 of Article 5935 of the Negotiable Instruments Act, that "to constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith." The opinion also correctly states, quoting from the opinion of this Court in Quannah A. & P. Ry. Co. v. Wichita State Bank & Trust Co., 127 Texas 407, 93 S. W. (2d) 701, 106 A. L. R. 821, that it is "the settled law of this State that the ordinary rule of notice does not apply to the purchaser of a negotiable instrument for a valuable consideration before maturity. The test in negotiable instrument

cases is good faith, and not diligence or negligence. Unless the purchaser has actual knowledge of facts and circumstances that would render the paper noncollectible or has knowledge of such facts as that a purchase of the instrument would amount to bad faith, it is immaterial that he had notice of such facts as would put a reasonably prudent person on inquiry, and that such inquiry would lead to discovery."

The Court of Civil Appeals reversed the judgment of the trial court because of its erroneous theory in submitting the case but refused to render judgment in favor of defendants, holding that the evidence raised an issue of bad faith of defendants in their dealings with Lundelius, and that such issue upon another trial should be submitted to the jury.

■ We sustain this holding, and overrule the first four assignments of plaintiff. These assignments invoke sections 55, 58 and 59 of Article 5935, alleging substantially that since the undisputed evidence disclosed that "title to each of the items of paper acquired by defendants was defective" and that "defendants participated in the proceeds to the extent of $7363.00 as commission," the judgment of the trial court should be affirmed.

■ It is pointed out in the Wichita State Bank case, supra, that it is the rule in this State "that in the purchase of a negotiable instrument, the *title* is derived from the *instrument itself*, and not from the party who transfers it." (Italics ours.) It follows that unless defendants can be connected with the original wrong doing of Lundelius by actual knowledge of it, or a finding of bad faith in acquiring the paper, they are protected as holders in due course. Quannah A. & P. Ry. Co. v. Bank, supra; Walker v. Commercial Credit Co., Inc., 107 S. W. (2d) 688.

■ We overrule also the contention of defendants that this case is ruled by American Surety Company v. Bache (wr. ref.) 82 S. W. (2d) 181. In that case the court was careful to point out that "the evidence showed conclusively that defendant (the purchasers of the paper) acted in perfect good faith." The controlling principle applicable in the present case is stated in West v. First Baptist Church of Taft, 123 Texas 388, 71 S. W. (2d) 1090, 1097, as follows: "The consummation of the purchase of a negotiable instrument with knowledge of suspicious circumstances sufficient only to put an ordinarily prudent person upon inquiry would convict the purchaser of negligence, not of dishonesty. To serve as evidence to support

a finding of bad faith, the unheeded suspicious circumstances must be of a substantial character and so strong that bad faith rather than merely negligence can reasonably be inferred from them."

There is substantial testimony in the present record from which it may be inferred reasonably in the light of surrounding circumstances that the purchaser of the paper acted in dishonest disregard of the rights of the bank. Lundelius was its exchange teller who had dealt with Ellis as such. The bank was in the same building in which the local office of Fenner & Beane, operated by Ellis and Nixon, was located. The testimony of the witness J. J. McCook, which was admitted over defendants' objections, tended to show that Nixon, defendants' "customer's man," possessed knowledge which, together with other facts and circumstances, raised the issue of bad faith. It is stated in McCook's testimony that Nixon told him he (Lundelius) "was taking some big losses;" that he thought he was—he was fearful that he was not getting the money that he was putting up for these margins in a proper way." Defendants had a written rule that "marginal business * * * for employees of banks must not be accepted without the consent of an officer of the bank," and both Ellis and Nixon knew that Lundelius worked for the bank whose paper he was negotiating in his transactions on the market. Ellis, who had previously been a director of the American National Bank, testified that he knew the bank did not permit its clerks to speculate on the stock market. He further testified that Lundelius soon after he began trading requested him to forward to New Orleans for collection the paper he might give in payment on his transactions in order that the bank would not know he was dealing in stocks. There is evidence that Lundelius had never had an account in the Austin National Bank until one was opened to handle funds between him and defendants "so it would not show on the American National Bank"; also that soon after Lundelius' operations began the New Orleans office, because of the delay caused by having to mail the paper given by him to New Orleans for collection, called Ellis and suggested that Lundelius open an account in the Austin National Bank and stated defendants would do likewise, and that the trades by this means could be carried on through that bank. The vice president of that bank testified that upon receiving a wire from Fenner & Beane he opened an account in the name of Lundelius; that he made out deposit slips for $33,000.00 (the first item of the Lundelius account) and charged same to Fenner & Beane; that he notified Lundelius that an account

had been opened in his name, and requested him to come by and execute a signature card. At about the same time an account was opened in the same bank by Fenner & Beane.

■ The foregoing testimony, including McCook's, while not conclusive in its nature, is sufficient to raise the issue of bad faith, and is admissible as tending to show that the agents of defendants in charge of the Austin branch had knowledge of facts from which it could reasonably be inferred that defendants in acquiring the paper negotiated by Lundelius acted in bad faith. Walker v. Commercial Credit Co., Inc., supra. Mr. Fenner's testimony does not change the issue raised from one of fact to one of law. He stated among other things that Lundelius had been trading about six weeks before they knew at the home office that Lundelius was a bank clerk; that about the end of December they sent a Mr. Sanford who had been their manager at Corpus Christi, to Austin, who learned of Lundelius' bank connection, and thereupon advised him (Mr. Fenner) of the whole situation by telephone. It was then that instructions were given the Austin branch that Lundelius' operations cease until consent of his bank had been procured to continue his trading. Mr. Fenner's testimony as to why Ellis had not notified the home office was that "he had been lax in his carrying out of instructions to always notify us."

■ It is no defense that the home office at New Orleans did not have actual notice of such facts as it is inferable that Ellis and Nixon possessed. Ellis and Nixon were the agents of defendants in its transactions with Lundelius, and were the only agents dealing directly with their customers at the Austin branch of their business. Furthermore the defendants retained the fruits of such dealings. Knowledge of the facts acquired by Ellis and Nixon in the matter of Lundelius' operations is imputed to defendants. Irvine v. Grady, 85 Texas 120, 19 S. W. 1028; Mays v. First State Bank (Com. App.), 247 S. W. 845; Chapman v. Denton (wr. ref.), 268 S. W. 252; Wilcox et al v. Dillard (wr. ref.), 3 S. W. (2d) 607; Vogel et al v. Zipp, 90 S. W. (2d) 668; Curtis, Collins & Holbrook Co. v. United States, 262 U. S. 215, 67 L. ed. 956, 43 Sup. Ct. 570. See also Magnolia Petroleum Co. v. Guffey, 129 Texas 293, 102 S. W. (2d) 408.

■ We hold also that the trial court was not in error in refusing to submit the issues requested by defendants inquiring whether either Ellis or Nixon agreed with Lundelius not to communicate the fact that he was a bank clerk to the New

Orleans office, and whether either of them agreed to conceal the fact. They are evidentiary issues only, and the facts, if any, raising these issues bear upon the ultimate issue of bad faith. The issues inquiring whether either Nixon or Ellis colluded with Lundelius should not be submitted. Affirmative answers to the inquiries would constitute no basis for a judgment for defendants. Connecticut Fire Insurance Co. v. Commercial Natl. Bank of San Antonio, 87 Fed. (2d) 968 and cases above cited. The business being furthered by collusion and concealment, if any, was not only the business of defendants but was business of which they received the fruits.

■ Plaintiff contends under another group of assignments that while the Court of Civil Appeals correctly holds that the issue of bad faith is raised by the pleadings and evidence it erred in failing to hold that the burden was upon defendants to establish their good faith. This contention cannot be upheld To so place the burden would be equivalent to presuming that defendants acted in bad faith. As it does not appear from the evidence either that defendants had actual knowledge of infirmity in the paper negotiated by Lundelius, or that they had knowledge of such facts that their action in taking the paper amounted as a matter of law to bad faith, the contention is overruled.

The Court of Civil Appeals was not in error in refusing to render judgment in defendants' favor, but upon another trial the issue of bad faith should be submitted to the jury if warranted by the pleadings and evidence.

In view of the necessity for another trial it need not be determined whether plaintiff's present petition is defective from the standpoint of alleging a cause of action predicated upon bad faith. The question need not arise upon another trial.

The judgment of the Court of Civil Appeals reversing the judgment of the trial court and remanding the cause, is affirmed.

Opinion adopted by the Supreme Court March 1, 1939.

Rehearing overruled April 5, 1939.