**CENTURY INDEMNITY COMPANY,**
Appellant,

v.

**FIRST NATIONAL BANK OF LONG-VIEW, Appellee.**

No. 6737.

Court of Civil Appeals of Texas.

Texarkana.

Oct. 7, 1954.

Leachman, Matthews & Gardere, Dallas, Hatchell, Storey & Hatchell, Longview, for appellant.

J. N. Saye, Philip Brin, Longview, for appellee.

FANNING, Justice.

Century Indemnity Company, issuer of a fidelity bond to Texas Bankers Investment Company, paid the investment company for losses sustained by reason of defalcations of Lattimore, local manager of the investment company at Longview. The indemnity company sued First National Bank of Longview, Texas, for $1,000 on a check in that amount issued by the investment company (by Lattimore, its local manager) payable to said bank. Trial to the court without a jury resulted in a judgment in favor of the bank, from which the indemnity company has appealed.

The investment company, engaged in the loan business, maintained a local office in Longview with Lattimore as its local man-

ager. Lattimore, in charge and control of the Longview office and its assets, had authority to draw checks for the use and operation of the company's business but not for his personal use or to pay his personal debts. His authority was oral and not restricted by any written instructions.

Prior to December 8, 1951, Van Zandt, a car dealer, owed appellee bank about $8,000 which was secured by mortgage upon his shop equipment. Van Zandt stated to the bank that he had sold his shop and equipment and he sought to get appellee bank to accept a note of Daniels and Lattimore for $1,000 and to release the mortgage upon his equipment but when appellee bank refused, Van Zandt stated that he would leave the note with the bank and if collected requested that he be given credit thereon. The bank refused to accept the note or an assignment of it or to take it as collateral. The bank agreed to release the mortgage for $2,500 and later agreed to release it for $1,500. Lattimore called Mr. Sunkel, Vice-President of appellee bank, and asked him if the bank had released the Van Zandt mortgage and when informed that the mortgage had not been released, Lattimore stated to Sunkel, "Well, I have got to make a trip to Dallas to see a man and when I get back I will come up there and see about it." The treasurer of the investment company testified by deposition that Lattimore recommended to the investment company that it make a loan to Daniels in the amount of $3,500 for the purpose of Daniels' purchasing equipment and going into the garage business and the investment company refused to make the loan. The record does not reveal, however, that this refusal of the investment company to make the Daniels loan was ever brought home to appellee bank or its vice-president Sunkel by Lattimore or anyone else.

On December 8, 1951, a $1,000 check of the investment company (signed by Lattimore), drawn on Longview National Bank (the depository bank of the investment company) payable to First National Bank of Longview, was delivered by a lady employee of the investment company to Sun-

kel, Vice-President of appellee bank. Sunkel phoned Van Zandt and asked him what to do with the check and Van Zandt told him to credit his note with it, which the bank did after the check was paid by the depository bank. Later, after the bank had cancelled the check, Van Zandt called and asked, "Did he pay any interest?" and Mr. Sunkel answered that he did not collect any interest as Van Zandt had not said anything about interest, and Van Zandt stated: "I have got to have some interest." Mr. Sunkel testified later that the interest was paid and he thought Van Zandt brought the money for it and it was credited that way and that a few days later Van Zandt paid an additional $500 and the bank released the chattel mortgage. *At the time of the issuance of the check in question and at all times involved here, Lattimore did not owe anything to appellee bank.* Sunkel testified that he knew that the investment company was in the business of financing garages and dealers in Longview, and he knew the company bought notes, that he did not know who was buying the equipment (which Van Zandt wanted released from the bank's mortgage and which Lattimore indicated he would see a man in Dallas about) as he had not been told who was buying the shop equipment and Sunkel stated further that Van Zandt told him that he (Van Zandt) would see that Texas Bankers Investment Company would send out a check for it. Lattimore did not have express authority to execute the check and it was really written by Lattimore for the purpose of paying a personal obligation owed by him to Van Zandt. Sunkel testified that he had no actual knowledge that Lattimore drew the check without authority from the investment company, or that the check was given for the personal benefit of Lattimore. Sunkel further testified that he had no actual knowledge that the check was being applied to any personal obligation of Lattimore. On cross-examination by appellant's counsel, Mr. Sunkel stated that he assumed (but did not know) that the $1,000 check was in payment of the $1,000 note (the Daniels-Lattimore note); Mr. Sunkel later testified on re-direct ex-

amination that he did not know whether he so assumed and that the only thing that entered his mind at the time was that a check was being given for $1,000 that belonged to Van Zandt, and further, Mr. Sunkel in answer to the direct question as to whether he had actual knowledge that the $1,000 check in evidence was being applied to any personal obligation of Lattimore, answered the question in the negative. *Mr. Sunkel further directly testified that it was his understanding all along that the transaction between Lattimore and Van Zandt was for the business of the investment company.* The trial court found, among other things, that the First National Bank of Longview had no actual notice that Lattimore was without authority to execute the check in question, that said bank had no actual notice that the aforesaid check was written for the personal benefit of Lattimore or to pay a personal obligation of his and that there was nothing to apprise said bank that the check was not written as a legitimate business transaction in behalf of Texas Bankers Investment Company. The trial court in its conclusions of law, among other things, concluded that the check in controversy was a negotiable instrument, that the First National Bank was a purchaser for value without actual notice of any infirmity in said check and was without actual notice that the check was written for the purpose of paying a personal obligation of Lattimore and without actual notice that he was not authorized to execute said check.

Appellant presents sixteen points. The first five points complain of the failure of the trial court to make certain findings of fact and conclusions of law. We overrule these five points because the record reveals that the appellant did not timely request (within five days) additional findings of fact and conclusions of law as required by Rule 298, Texas Rules of Civil Procedure, which reads in part as follows: "After the judge so files original findings of fact and conclusions of law either party may, *within five days,* request of him specified further, additional, or amended find-

ings; and the judge shall, within five days after such request, and not later, prepare and file such further, other or amended findings and conclusions * * *." (Emphasis added.) After request of appellant the court filed findings of fact and conclusions of law on July 6, 1953. On July 17, 1953 *(more than five days later),* appellant filed his exceptions to the court's findings and conclusions and prayed for the supply of certain findings and conclusions omitted.

Rule 299, T.R.C.P., reads in part as follows: "Where findings of fact are filed by the trial court they shall form the basis of the judgment upon all grounds of recovery and of defense embraced therein. The judgment may not be supported upon appeal by a presumption of finding upon any ground of recovery or defense, no element of which has been found by the trial court; but where one or more elements thereof have been found by the trial court, omitted unrequested elements, where supported by evidence, will be supplied by presumption in support of the judgment. * * *"

McDonald Tex.Civ.Practice, 494, Sec. 16.07, quotes from Rule 298 to show that if a party deems the initial findings or conclusions incomplete, incorrect or overly general, he must make a request within the time allowed for additional findings, and states: "In the absence of such a request, a vague or general finding will be held sufficient, and an omitted finding will be supplied in accordance with the presumption noted in Sec. 16.08." Also see Penn v. Abell, Tex. Civ.App., 173 S.W.2d 483, 490, and Baker v. Elliott, Tex.Civ.App., 198 S.W.2d 152.

Appellant complains in its points 6 to 15, inclusive, of various fact findings and conclusions of law of the trial court. Appellant contends, in its sixteenth point, that the trial court erred in rendering judgment for the defendant "because the evidence discloses that the defendant bank was, at the time of the transaction, possessed of knowledge of facts as would cause a prudent man to make further inquiry and had it done so, it would have found as a matter of law that Lattimore, the agent of the

finance company, had no authority to execute and deliver the check in payment of his own personal obligation."

Appellant states in its brief its theory of the lawsuit. We quote from said brief as follows: "The case was filed and prosecuted by the plaintiff on the theory that the defendant bank was put on inquiry as to M. Lattimore's authority to write the check in question and on inquiry as to whether or not it was given for a personal debt, and it was therefore bound by what an investigation would have disclosed. The check itself together with the circumstances under which it was given to the bank, the way it was written and the other testimony herein, as a matter of law, put the bank on inquiry as to the good faith of the entire transaction. An investigation would have disclosed that Lattimore had no authority to write the check in question nor to give it in payment of his personal obligation. * * * The issue is not if the defendant had 'actual knowledge' that Lattimore was without authority to write the check to pay his personal debt, but if the bank had sufficient information to put an ordinary prudent person upon inquiry, as to the good faith thereof."

We believe that the real issues to be resolved in a case like this are as follows: (1) Did the bank have actual knowledge of any infirmity or defect in the check in question? (Whether the check in question was for the personal debt of Lattimore and whether or not it was authorized by the investment company); and (2) did the bank have knowledge of such facts that its action in taking the instrument amounted to bad faith?

Article 5935, Secs. 56 and 57, Vernon's Ann.Civ.St., sets forth the rights of the holder of a negotiable instrument as follows: "Sec. 56. To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated *must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith.* Sec. 57. A

holder in due course holds the instrument free from any defect of title of prior parties, and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon." (Emphasis added.)

The check in question was a negotiable instrument. Quanah A. & P. R. Co. v. Wichita State Bank & Trust Co., 127 Tex. 407, 93 S.W.2d 701, 707, 106 A.L.R. 821; Full Gospel Assemblies in Christ v. Montgomery Ward & Co., Tex.Civ.App., 237 S.W.2d 657, error dismissed. We quote from the opinion of the Supreme Court of Texas in Quanah A. & P. R. Co. v. Wichita State Bank & Trust Co., supra [127 Tex. 407, 93 S.W.2d 704], as follows:

"* * * The test in negotiable instruments cases in good faith, and not diligence or negligence. Unless the purchaser has *actual knowledge* of facts and circumstances that would render the paper noncollectible, or has knowledge of such facts as that a purchase of the instrument would amount to bad faith, *it is immaterial that he has notice of such facts as would put a reasonably prudent person on inquiry, and that such inquiry would lead to discovery.* 6 Tex.Jur., p. 708, § 93 et seq., and authorities there cited; sections 52, 53, 55, and 56, art. 5935, supra. * * *

" ' "The law of the case seems to be within a narrow compass. There is not a particle of evidence tending to prove that the bank did not act in perfect good faith in this transaction, in respect of which it occupied no fiduciary relation to plaintiff. It does not appear from the evidence to what purpose the proceeds of the check were ultimately applied by Harris—it may have been to his own or to those of the association—nor is this a matter of any importance upon the present issue. The bank was not responsible for the proper application of those proceeds by him. R.S. 1889, § 8691 (Mo.St.Ann. § 3144, p. 8172 [V.A.M.S. § 456.230]). *The check was a negotiable instrument.* Famous Shoe & Clothing Co. v. Crosswhite, 124 Mo. 34 (27 S.W. 397, 26 L.R.A. 568, 46 Am.St.Rep.

424). *The credit given to the account of Harris was the same as if the money had been paid him on the check and had been immediately placed back by him and credited on his own account.* Benton v. [German-American Nat.] Bank, 122 Mo. 332 (26 S.W. 975); Oddie v. [National City] Bank, 45 N.Y. 735 (6 Am.Rep. 160); 2 Morse on Banks and Banking (3d Ed.) § 451. *The bank thereby became a purchaser for value, in the ordinary course of business, of the instrument,* and entitled to collect the proceeds thereof to its own account if it acquired plaintiff's title by indorsement." ' " (Emphasis added.)

In American Surety Co. of N. Y. v. Fenner, 133 Tex. 37, 125 S.W.2d 258, 260, it is stated: "It is pointed out in the Wichita State Bank case, supra (127 Tex. 407, 93 S.W.2d [701] 704, [106 A.L.R. 821]), that it is a rule in this state 'that in the purchase of a negotiable instrument the *title* is derived from the *instrument itself,* and not from the title of the party who transfers it.' (Italics ours.) It follows that unless defendants can be connected with the original wrongdoing of Lundelius by actual knowledge of it, or a finding of bad faith in acquiring the paper, they are protected as holders in due course. Quanah A. & P. R. Co. v. Wichita State Bank, supra; Walker v. Commercial Credit Co., Inc., Tex.Civ.App., 107 S.W.2d 688."

Fenner v. American Surety Co. of N. Y., Tex.Civ.App., 156 S.W.2d 279, w/r, n. r. e., holds among other things, that the term "bad faith" as used in the negotiable instruments act is not defined by statute, but is left as a question of fact under the peculiar circumstances of each case.

The Supreme Court of Texas, in a recent opinion by Justice Smith, in Citizens Bridge Co. v. Guerra, Tex.Sup., 258 S.W.2d 64, 69, states: "Respondent has jury findings that, at the time he took the notes on May 8, 1949, he had no actual knowledge of infirmities in them, and no knowledge of such facts that his action in taking the notes amounted to bad faith. There is no reason for disturbing the former finding as to actual knowledge. * * * It is then nec-

essary to consider the Bridge Company's contention that as a matter of law Guerra had on May 8, 1949, knowledge of such facts that his action in taking the notes amounted to bad faith. This is normally a question of fact. But it is necessary to know the legal standards by which the mala fides of Guerra are to be measured. They are found in West v. First Baptist Church of Taft, 123 Tex. 388, 71 S.W.2d 1090; Quanah A. & P. R. Co. v. Wichita State Bank & Trust Co., 127 Tex. 407, 93 S.W.2d 701, 106 A.L.R. 821; American Surety Co. of N. Y. v. Fenner, 133 Tex. 37, 125 S.W. 2d 258; Fenner v. American Surety Co. of N. Y., Tex.Civ.App., 156 S.W.2d 279, 282. Those standards are: (1) The test is good or bad faith and not diligence or negligence. (2) Knowledge of facts merely sufficient to cause one of ordinary prudence to make inquiry, with failure to make such inquiry, is not evidence of bad faith. (3) Even gross negligence is not the same thing as bad faith, although it may be evidence tending to prove bad faith. (4) To constitute evidence of bad faith, the facts known to the taker must be such as reasonably to form the basis for an inference that in acquiring the instrument with knowledge of such facts he acted in dishonest disregard of the rights of defendant. (5) Wilful ignorance is the equivalent of bad faith and bad faith may be shown by a wilful disregard of and refusal to learn the facts when available and at hand. * * * However negligent Guerra may have been under all these circumstances in failing to make additional inquiry as to the validity of the notes, we cannot say, in the face of the jury findings, that he was guilty of bad faith as a matter of law."

In 9 C.J.S., Banks & Banking, § 254, p. 528, it is stated: "Where an agent is authorized for some purposes, to sign or indorse instruments, but does so in an instance where he is not authorized, the bank collecting an instrument under such signature or indorsement is not a converter where it has no notice of the wrongdoing." In Burke County v. First National Bank of Birmingham, 5 Cir., 73 F.2d 783, 786, the bank re-

ceived checks for collection to the credit of a contractor, the credit being subject to cancellation in an event of non-payment by the bank on which the check was drawn; each of the checks was paid upon presentation to the bank upon which it was drawn but it was later found that the checks had been improperly endorsed over to the contractor. The court in holding the bank not liable, stated: "In getting from the holder thereof a negotiable check, duly indorsed by the payee, and as agent of the holder collecting the sum for which the check was given, without any notice of any invalidity of its principal's title to the check, the appellee did not wrongfully exercise dominion over another's personal property, and did not become chargeable with the commission of a tort. What the evidence showed the appellee did with reference to that check was not a wrongful conversion of it."

▇ We have carefully reviewed the record and are of the opinion that fact finding No. 5 of the trial court "that the First National Bank of Longview had no actual notice that Lattimore was without authority to execute the check in question, that said bank had no actual notice that said check was written for the personal benefit of Lattimore or to pay a personal obligation of his, and that there was nothing to apprise said bank that the check was not written as a legitimate business transaction in behalf of Texas Bankers Investment Company," is sufficiently supported by the evidence.

▇ There was no direct and specific finding in so many words by the trial court as to whether appellee bank had knowledge of such facts that its action in taking the check in question would amount to bad faith (although it could probably well be argued that the finding of the court "that there was nothing to apprise said bank that the check in question was not written as a legitimate business transaction in behalf of Texas Bankers Investment Company" is tantamount to a finding negativing bad faith on the part of the bank). However, neither a specific nor timely request was made by appellant of the trial court to make a specific finding on "bad faith" and under Rule 299, T.R.C.P., the specific omitted finding on bad faith (if it was omitted) will be presumed to have been found in favor of the bank by the trial court in order to support the judgment of the trial court.

▇ It was the primary duty of the trial court to weigh all the evidence and circumstances in this case including any and all inconsistencies and to reach a decision thereon. After carefully reviewing the record, and in the face of the specific and implied findings of fact of the trial court, we have reached the conclusion that we cannot say that the appellee bank in taking the check in question was guilty of bad faith as a matter of law, nor can we say that there is no evidence to support the specific and implied findings of the trial court on this matter. We are of the further opinion that the specific and the implied findings of the trial court in support of the judgment are sufficiently supported by the evidence.

The case of U. S. Fidelity & Guaranty Co. v. Adoue and Lobit, 104 Tex. 379, 137 S.W. 648, cited by appellant, we think is not applicable to the facts in the case at bar. We have also carefully read all of the authorities cited in appellant's excellent brief and have carefully considered all of appellant's points, but believing that this case should be affirmed, we respectfully overrule all of appellant's points.

Having overruled appellant's points, we deem it unnecessary to pass on appellee's fifth and sixth counterpoints.

The judgment of the trial court is affirmed.