**SOUTHWEST AMERICAN LIFE INSUR-
ANCE COMPANY, Appellant,**

v.

**J. C. DUNN, Appellee.**

No. 3574.

Court of Civil Appeals of Texas.

Eastland.

March 10, 1961.

Rehearing Denied April 7, 1961.

Bracewell, Reynolds & Patterson, Houston, for appellant.

Kelley, Looney, McLean & Littleton, Edinburg, for appellee.

COLLINGS, Justice.

J. C. Dunn brought this suit against the Commerce Life Insurance Company, its successor, the Southwest American Life Insurance Company, and others, including the company officers, R. K. Abbrat, W. A. Thomas and Vincent Caltigirone. Dunn sought to set off the unpaid balance on a note which R. K. Abbrat had made and delivered to him against two notes which Dunn executed payable to Abbrat, which had been assigned to the Commerce Life Insurance Company. On motion of Southwest American Life Insurance Company, its cause of action based upon two other notes executed by Dunn in 1953 and payable to Commerce Life Insurance Company was severed. Judgment was then entered setting off the unpaid balance due Dunn on the note made and delivered to him by Abbrat against the unpaid balance on the notes made by Dunn, which had been assigned by Abbrat the payee to Commerce Life Insurance Company. Southwest American Life Insurance Company has appealed from the judgment allowing the set off in favor of J. C. Dunn.

The judgment allowing the set off is based upon the following findings of fact by the trial court:

"1. During the first two or three months of 1955, Plaintiff J. C. Dunn, needing funds for his business, contacted Commerce Life Insurance Company in Houston, Texas, relative to securing a loan.

"2. Prior to 1955, Dunn had borrowed substantial sums of money from this company, most of which had been repaid, and at the time that Dunn made application for a loan there was outstanding the balance on notes given by Dunn to the Commerce Life Insurance Company in August, 1953.

"3. When loans prior to those of 1955 (the subject of the present judgment) had been negotiated the insurance company had been represented by its President R. K. Abbrat; its Vice President and Secretary, W. A. Thomas and its Vice President and Treasurer, Vincent Caltigirone; and one of these individuals continued as an officer in the successor company, the Southern Republic Life Insurance Company.

"4. In response to Dunn's request for a loan of $100,000.00, Abbrat and Thomas talked to Dunn and he was told that the insurance company did not have sufficient funds on hand to pay out all of the $100,000.00 at one time and suggested a transaction intended to give Dunn the funds from the insurance company that he needed within a period of eighteen months in consideration of their repayment over a period of some fifteen years.

"5. Pursuant to the plan and suggestion of R. K. Abbrat (with the apparent knowledge of Thomas, and possibly of Caltigirone) Dunn executed two promissory notes in principal amounts of $70,000.00 and $30,000.00 payable to Abbrat, respectively, both payable in annual installments over a period of fifteen years, upon the representation that Dunn would receive $100,000.00 needed for his business from the insurance company over a period of eight months; and R. K. Ab-

brat, to further assure Dunn that the $100,000.00 would be paid by the insurance company as promised, executed and delivered to Dunn his note in the principal amount of $100,000.00 payable in two equal installments on April 1, 1956, and October 1, 1956.

"6. The notes executed by Dunn were secured by Deed of Trust liens executed on real estate as the same is described in the Plaintiff's Petition; and the note executed by Abbrat to Dunn was secured by shares of stock in a holding company which was represented by Abbrat to own the controlling interests of the Commerce Life Insurance Company.

"7. Abbrat immediately transferred Dunn's note to the Commerce Life Insurance Company and the installment payments due during the year 1956 were made by Dunn to the insurance company, there being a credit on the principal of said two notes of $6,666.66.

"8. Subsequently, and during the year 1956 an extension of time for payment of the Abbrat note in the principal amount of $100,000.00 was requested of Dunn, and an agreement for extension was entered into, which was evidenced by letter executed by Abbrat, Thomas and Caltigirone. These three individuals were all parties to the transaction with Dunn.

"9. Dunn has received and given credit for the sum of $33,000.00 on the note payable to him, leaving a balance on principal of $67,000.00.

"10. Subsequent to the extension of time given by letter agreement (signed by Dunn as well as Abbrat, Thomas and Caltigirone), Dunn learned that a merger between Commerce Life Insurance Company and Southern Republic Life Insurance Company was being considered, and on advice of counsel, Dunn notified the Southern Republic Life Insurance Company of his claim of offset for the balance due on the Abbrat note. He notified the Southern Republic Life Insurance Company that he had never received the proceeds of his loan.

"11. Commerce Life Insurance Company merged with Southern Republic Life Insurance Company and, thereafter, both of these companies merged with, or were succeeded by, the company that is now known as Southwest American Life Insurance Company.

"12. At the time of the transaction of the loan in March, 1955, Abbrat was acting for the Commerce Life Insurance Company in accepting Dunn's notes, in assigning them to the insurance company, and in the company's acceptance of the assignment of the notes; while acting for himself, he was also acting for the insurance company in the transaction through which they acquired the said two notes of Dunn in the principal amounts of $70,000.00 and $30,000.00, respectively.

"13. While Thomas and Caltigirone were not both present in all of the phases of the transaction, the Court finds that Abbrat, Thomas and Caltigirone were acting in concert in the transaction of the loan with Dunn, and that each and all of them had knowledge of the transaction from the outset.

"14. The Court further finds that (in addition to Abbrat acting as well for the insurance company as for himself) Thomas and Caltigirone also acted for the company in the transaction in question.

"15. Abbrat, Thomas and Caltigirone were each and all officers of the Commerce Life Insurance Company when the loan was applied for by Dunn, when the transaction of the loan and exchange of notes was suggested and completed, as aforesaid, and when an

extension of the Abbrat note was negotiated with Dunn in 1956.

"16. The difference of the outstanding balances on the principal of the notes that are involved is in the sum of $26,333.33, and this sum is arrived at by adding the balances on the two notes given by Dunn in the original amounts of $70,000.00 and $30,000.00, respectively, on which the balances are $65,333.-33 and $28,000.00, respectively, making a total of $93,333.33, and deducting from the total balance the sum of $67,-000.00 which is the balance on the note given to Dunn in an original amount of $100,000.00.

"17. In the merger of the Commerce Life Insurance Company and the Southern Republic Life Insurance Company, the latter company, after receiving notes from Dunn as to his claim of offset, made particular arrangements in connection with the notes in question for the purpose of protecting itself against the offset or credit that was claimed by Dunn."

■ Appellant's first point asserts that the "trial court erred in entering judgment based on findings not supported by the evidence." From the argument made by appellant in connection with this point, we assume, although it is not entirely clear, that the contention is both that there was no evidence to support the findings and that the findings are against the great weight and preponderance of the evidence. We overrule these contentions. There was ample evidence showing that in 1955 appellee contacted Commerce Life Insurance Company in Houston, Texas, relative to securing a loan of $100,000; that prior to 1955, towit, in 1953, appellee had borrowed substantial sums of money from that insurance company, most of which had been repaid, and when such prior loans had been negotiated, the Commerce Life Insurance Company was represented by its President, R. K. Abbrat, its Vice President and Secretary, W. A. Thomas, and by its Vice President and Treasurer, Vincent Caltigirone. It is also true, but not contradictory to the findings made by the court, that when Dunn first met these individuals in the middle nineteen-forties they were officials of the Citadel Life Insurance Company and Dunn, at that time, borrowed a substantial amount of money from that company and thereafter fully repaid it. Contrary to appellant's contention, there is ample evidence to support the court's findings of fact numbers four and five. We cannot agree with appellant's contention in this connection that the evidence shows only that Dunn was dealing with Abbrat as an individual and that there was no evidence of a plan by Abbrat, acquiesced in by other officials of Commerce Life Insurance Company, by which Dunn was to secure a loan of $100,000 from the defendant insurance company. Abbrat, Thomas and Caltigirone were all officers of the defendant company. A letter dated April 10, 1956, signed and accepted by all three of these company officials clearly indicated that they had knowledge of and acquiesced in the transaction which on its face purported to be between Abbrat and Dunn. The letter in question referred to "the collateral agreement executed contemporaneously * * *" with the note showing knowledge and acquiescence on their part, which acquiescence was necessary and had meaning only as officials of the company and in their official capacity as such. Mr. Caltigirone was retained for a time as Vice President of Southern Republic Life Insurance Company, the immediate successor to Commerce Life Insurance Company, and made specific arrangements concerning the Dunn notes in its merger with Commerce Life Insurance Company. There was ample evidence to support the findings of fact made by the trial court and measured by the rule laid down in In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, the findings were not against the great weight and preponderance of the evidence.

■ It is contended in appellant's second point that the court erred in holding that appellee was entitled to set off the unpaid

balance on the note Abbrat had executed and delivered to him against the balance he owed on the two notes he had made to Abbrat which had been assigned to Commerce Life Insurance Company. This point is likewise not well taken. It was found by the court and the evidence supports the finding that the entire operation in which Dunn and Abbrat made notes payable to each other was an arrangement or plan, the purpose of which was to effectuate a loan by the Commerce Life Insurance Company to Dunn in the sum of $100,000. Abbrat was acting for the insurance company at the time the arrangement was made and the notes were executed. The letter of April 10, 1956, showed that not only Abbrat, but also Thomas and Caltigirone, all of whom were officers of Commerce Life Insurance Company, had full knowledge of the transaction and acquiesced in, accepted and confirmed the arrangement. The insurance company was, under the circumstances, charged with notice or knowledge of the entire transaction between Dunn and Abbrat and was bound thereby. Wellington Oil Co. of Delaware v. Maffi, 136 Tex. 201, 150 S.W.2d 60; American Surety Co. of New York v. Fenner, 133 Tex. 37, 125 S.W.2d 258; Wilcox v. Dillard, Tex.Civ.App., 3 S.W.2d 507, (Writ Ref.). For the reasons stated, the court did not err in holding that Dunn was entitled to offset the unpaid balance of the note given by Abbrat to him against the balance owed by him on the note which he had made to Abbrat, and that appellant insurance company was entitled to a judgment against Dunn for the balance due on the note given by Dunn after the allowance of the offset.

■ The trial court granted judgment for appellant insurance company for $26,-333.33, being the principal balance due on the two notes executed by Dunn after allowing the offset. The court, however, did not allow appellant any past due interest or attorneys' fees as provided by the terms of both notes. The notes provided as follows:

"And it is hereby specially agreed that if this note is placed in the hands of an attorney for collection or if collected by suit or through the probate court, the undersigned agrees to pay ten percent additional on the principal and interest then due hereon as attorneys' fees."

In appellant's third point it is contended that the court erred in not allowing appellant interest and attorneys' fees as provided in the note upon which the court granted appellant judgment. This point is sustained. A provision for interest and a specified percent of the amount due as attorneys' fees, creates an obligation concerning those items which is as much a part of the debt as the principal and proof of the reasonableness of the attorneys' fees is not required. Kuper v. Schmidt, Tex., 338 S.W.2d 948; First National Bank v. Robinson, 104 Tex. 166, 135 S.W. 372; Gardner v. Associates Inv. Co., Tex.Civ.App., 171 S.W.2d 381, (Writ Ref.). Where, as here, a set off or counterclaim is allowed it is held "that the stipulated per cent for attorney's fees should be applied to the final amount found due". 11 C.J.S. Bills and Notes § 726, p. 282; Ward v. Boydstun, 63 Tex.Civ.App. 656, 134 S.W. 786; Ware v. Paxton, Tex.Civ.App., 266 S.W.2d 218, (Ref. N.R.E.).

■ In appellee's counterpoint it is urged that the court did not err in failing to render judgment for appellant for interest and attorneys' fees because appellant made no request to the court for judgment covering these items; that the judgment was prepared by appellant and entered by the court without change and if there was any error on the part of the trial court in this respect it was invited and not reversible. We cannot agree with appellee's contention. The record does show that the judgment was prepared and submitted to the court by the attorney for appellant, Southwest American Life Insurance Company, and with the understanding that appellant would request findings of fact and conclusions of law, the court signed and

entered the judgment. The judgment recited appellant's notice of appeal and that it was approved as to form only. The judgment was rendered by the court and there is nothing to indicate that appellant agreed to or acquiesced in any part of it. The mere fact that appellant's attorney prepared the judgment does not show that he agreed to its provisions but only that it was prepared according to the instructions of the court. The notice of appeal, and the approval as to form only, showed lack of acquiescence.

The portion of the judgment allowing the set off in favor of J. C. Dunn is affirmed. There was error in failing to allow Southwest American Life Insurance Company interest and attorneys' fees, as provided in the notes, on the $26,333.33 principal balance due after allowing the set off. The judgment to that extent is reversed and remanded with instructions to enter judgment in compliance with this opinion.