Thomas H. BELL, Appellant,

v.

KUYKENDALL INVESTMENT COMPANY et al., Appellees.

No. 4222.

Court of Civil Appeals of Texas.

Waco.

May 14, 1964.

Rehearing Denied June 4, 1964.

Tuck R. Chapin, Putman & Putman, San Antonio, for appellant.

Key, Carr & Clark, Evans, Parr, Trout & Jones, Lubbock, for appellees.

TIREY, Justice.

Plaintiff, Kuykendall Investment Company, a partnership, grounded its cause of action on two promissory notes, negotiable on their face, executed by Thomas H. Bell to the Lubbock Machine & Supply Company, Inc., a corporation, which notes were secured by chattel mortgages on personal property. Plaintiff sought judgment on the notes and for foreclosure of the mortgage lien. It alleged substantially that it was a purchaser for value before maturity, with recourse. At the close of the evidence the court overruled all motions for instructed verdict and submitted two issues to the jury. They are:

"1. Do you find from a preponderance of the evidence that Kuykendall Investment Company knew, at the time it purchased the notes in question, that the tanks covered by the contracts were not in existence?

"Answer 'They knew the tanks were not in existence' or 'They did not know the tanks were not in existence.' "

The jury answered: "They did not know the tanks were not in existence."

"2. Do you find from a preponderance of the evidence that Lubbock Machine & Supply Company knew, at the time they obtained the notes in question and endorsed them to the Kuykendall Investment Company, that the tanks covered by said notes were not in existence?

"Answer 'They knew the tanks were not in existence' or 'they did not know the tanks were not in existence.' "

The jury answered: "They did not know the tanks were not in existence."

The court granted plaintiff's motion for judgment on the verdict and decreed that plaintiff recover against Bell and the Lubbock Machine & Supply Company, Inc., jointly and severally, the sum of $50,666.33. The decree further provided that of the foregoing sum $44,057.68 bear interest at the rate of 10% per annum from June 24, 1963, and that $6,608.65 (said sum being for attorney's fees) bear interest at the rate of 6% per annum from the date of the judgment. The decree further provided that execution be levied, first, upon the property of Thomas H. Bell, and then upon the property of Lubbock Machine & Supply Co., Inc., until such judgment is satisfied in full. It denied all relief asked by cross-plaintiff, Bell, against cross-defendant, Lubbock Machine & Supply Company, Inc. We affirm the judgment of the trial court.

Plaintiff went to trial on its original petition and its first and second supplemental petitions. Plaintiff alleged that Bell executed and delivered to Lubbock Machine & Supply Company, Inc., his promissory note and chattel mortgage dated March 11, 1961, payable to said machine supply company at Lubbock, Texas, for the sum of $46,800.00, payable in 60 monthly installments of $780.00 each, the first installment being due April 15, 1961, and one installment to be due and payable on the 15th day of each succeeding month thereafter, with final installment to be equal to the deferred balance remaining due; such note provided that all past due installments shall bear interest at the rate of 10% per annum from maturity thereof, and had the usual provisions as to attorney's fees, providing for 15% additional on principal and interest. The chattel mortgage securing this note described the following property:

"66 – 1000 gallon rebuilt ammonia tanks mounted on and together with four-wheel trailers, * * *"

and gave their serial numbers.

Plaintiff further alleged that on the 14th day of March, 1961, Lubbock Machine & Supply Co., Inc., duly executed and delivered its assignment and guaranty of the note above described to the plaintiff, in which assignment and guaranty it assigned and set over to the plaintiff, with recourse, all its right, title and interest in and to the note and chattel mortgage and warranted that the mortgage and note were genuine, and that the down payment made by the purchaser, mortgagor, was in cash or its equivalent; that said company unconditionally guaranteed the payment of the indebtedness evidenced by the note, at maturity, or on demand at any time after maturity, waiving demand, protest and notice of nonpayment, and agreed to all extensions, renewals and indulgences given or granted, all without notice to the Lubbock Machine & Supply Co., Inc. Plaintiff further alleged that the note and mortgage was properly filed for record with the county clerk of Reeves County and registered by said clerk in said mortgage records, same having been filed on the 17th day of March, 1961. Plaintiff further alleged that Bell paid to the plaintiff twelve of the installments due on such note, and that defendant failed to pay the installment due on March 15, 1962, and plaintiff has elected to mature said note and declare the entire amount immediately due and payable as authorized under the note and mortgage.

Plaintiff further alleged that on the 12th day of June, 1961, Bell executed and delivered to the Lubbock Machine & Supply Company, Inc., his promissory note and chattel mortgage dated June 12, 1961, whereby he promised to pay to said corporation, or its order, at Lubbock, Texas, or at the option of the holder at Amarillo, Texas, $11,261.40, in 60 monthly installments of $187.69 each, beginning on July 14, 1961, and one installment to be due and payable on the 14th day of each succeeding month thereafter, with final installment to be equal to the deferred balance remaining due, such note providing that all past due installments shall bear interest at the rate of 10% per annum, and providing for accelerated maturity and attorney's fees of 15% additional on the principal and inter-

est. The chattel mortgage executed contemporaneously with said note described the following personal property:

"14 – 1000 gallon NH3 Tanks, mounted on 4-wheel trailers with wheels and tires, * * *"

giving serial numbers.

Plaintiff further alleged that it acquired this note on the 17th day of June, 1961, from said Lubbock Machine & Supply Co., Inc; it also alleged substantially that it was a purchaser for value, in good faith and before maturity, with recourse, and it asked for appropriate judgment and for foreclosure of its chattel mortgage lien. At the close of the evidence Bell submitted the following special issues:

"1. Do you find from a preponderance of the evidence that Lubbock Machine & Supply Company was authorized by Kuykendall Investment Company to obtain the notes signed by Thomas H. Bell?

"Answer: ——YES ——No."

Which issue was refused by the trial court and Bell excepted.

"2. Do you find from a preponderance of the evidence that Kuykendall Investment Company required Lubbock Machine & Supply Company to obtain a delivery receipt as a condition precedent to accepting notes signed by Thomas H. Bell?

"Answer: ——YES ——No."

This issue was refused by the trial court and Bell excepted.

"3. Do you find from a preponderance of the evidence that Kuykendall Investment Company acted in bad faith as that term is herein defined in accepting the notes signed by Thomas H. Bell?

"Answer: ——YES ——No.

"We, the jury, answer ——.

"The term bad faith is defined as follows: You are instructed that the term bad faith as used in this charge means that the person taking the instrument must have had knowledge of such substantial facts and circumstances as to create in his mind that there was a suspicion that there was something wrong with the title of the person from whom he takes it that the instrument itself, that the money represented by such instrument, combined with the intentional disregard of, refusal on the part of the taker of the instrument to learn the facts of the means and the knowledge which he knows are at hand."

This issue was refused, to which Bell excepted.

"4. Do you find from a preponderance of the evidence that there was such a close relationship in the transactions in question between Billie Sol Estes, Lubbock Machine and Supply Company and Kuykendall Investment Company as to put them all in a position of being parties to the original transactions?

"Answer: ——YES ——No."

This issue was refused, to which Bell excepted. We sustain the court's action in refusing to give the foregoing issues requested by Bell. Our action in so doing is grounded on the fact that the evidence and the record as a whole show, without dispute, that plaintiff was a purchaser for value of each of these notes before maturity, with recourse, and a holder in due course, and that none of the issues were tendered by the evidence. Sections 56 and 57 of Article 5935, Vernon's Ann.Tex.St., provide:

"Sec. 56. To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking

the instrument amounted to bad faith. "Sec. 57. A holder in due course holds the instrument free from any defect of title of prior parties, and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon."

Since we are of the view that the evidence did not tender either of the foregoing issues, and since the record is ample to sustain the jury's verdict, we are of the view that appellant's points 1, 2 and 3 complaining of the action of the trial court in refusing to submit the foregoing issues are without merit, and each point is overruled. See American Surety Company of New York v. Fenner, 133 Tex. 37, 125 S.W.2d 258, (Comm.App., opinion adopted). See cases there cited. See also opinion of this court in Uptmor v. Janes, Tex.Civ.App., 210 S.W.2d 235, (n. r. e.).

■ We think we should say that evidence was tendered to the effect that operating statements made by defendant, Bell, showed his net profit for the year ending November 1, 1958, to be $102,349.87, and that for the year ending November 1, 1959, his net profit was $112,674.03, and for the year ending November 1, 1960, his net profit was $188,439.96. The note for $46,800.-00, which is part of the subject matter of this suit, was dated March 11, 1961, and it was acquired by plaintiff from the payee on March 14, 1961, before maturity, and plaintiff paid the payee the sum of $36,000.00 for such note. The other note for $11,-261.40, which is also part of the subject matter of this suit, was executed by Bell on June 12, 1961, and it was acquired by plaintiff from payee on June 17, 1961, before maturity, for a consideration of $8,-662.50. On the first note Bell made 12 payments of $780.00 each, totaling $9,360.00, and on the last note referred to, Bell made 8 payments of $187.69, totaling $1501.50. Bell made no payments on either note after February, 1962. In this connection we think it is pertinent to state that it is without dispute that Bell made a financial statement on November 1, 1959, showing his net worth to be $735,784.02; that he made another financial statement November 1, 1960, in which he showed his net worth to be $797,509.76. Bell admitted that he knew the foregoing statements were inflated and false when he signed them, and that they were to be used to induce lending institutions to buy his notes. There is no evidence in the record to show that appellee knew the financial statements were false, and it is also without dispute that Kuykendall Investment Company purchased the Bell notes in question after examination of Bell's financial statements and credit references had been answered with favorable comment. It is also true that after Kuykendall Investment Company purchased each of the notes in suit that it notified Bell of its purchase of such notes, and Bell did not object to the validity of the notes after being so notified. As above stated, Bell made 12 monthly payments on the big note, and eight monthly payments on the smaller note, which we have heretofore pointed out. We think the foregoing brings defendant, Bell, within the rule announced by this court in J. R. Watkins v. King, Tex. Civ.App., 83 S.W.2d 405, wherein we find the following pronouncement:

"When a party testifies to positive and definite facts which, if true, would defeat his right to recover or conclusively show his liability, and such statements are not subsequently modified or explained by him so as to show that he was mistaken, although testifying in good faith, it has generally been held that he is conclusively bound by his own testimony and cannot successfully complain if he is nonsuited or the court directs a verdict against him." Points (2, 3); citing many cases.

Our Supreme Court reaffirmed this doctrine in Stanolind Oil & Gas Co. v. State, 136 Tex. 5, 145 S.W.2d 569, point 1, (citing many cases), and has not seen fit to change it. See Texas Digest Evidence, ☞591,

265(10); also Trial ☞141. See also Payne v. First National Bank, 291 S.W. 209, (Comm.App.).

■■ We have given much consideration to the briefs of the parties and to the voluminous statement of facts, and after a careful review of the same we are of the view that Bell, in the trial court and in the court here, is seeking to get us to view this cause in the light of all the facts that were developed about Billie Sol Estes and his activities since March of 1962, which was months after plaintiff acquired the notes. We are certainly not authorized, under the undisputed factual situation, to do so. On the contrary, it was the duty of the trial court, and likewise our duty, to view this cause in the light of the information available to the parties when the Bell notes in suit were executed, delivered and purchased by the Kuykendall Investment Company in 1961. Since it is without dispute, as we understand the record, that Kuykendall Investment Company purchased each of the foregoing notes in suit for a valuable consideration, before maturity, with recourse, and since each of the notes were negotiable instruments on their face, the appellant's contentions, under the record here made, are wholly without merit, and we can see no reason for a more detailed discussion of the points raised by appellant because they are in no wise applicable to the controlling factual situation before us. The issues submitted by the court in its charge are, in our view, the only pertinent issues tendered by the evidence, and the jury having answered each of them adversely to appellant, and the evidence being ample to sustain the jury's verdict, further discussion of appellant's points, and the cases there cited, would be of no avail. That leads us to say that we have carefully considered each of the other points tendered in appellant's brief and we find that each is without merit, and each is overruled.

Accordingly, the judgment of the trial court is affirmed.